HANS J. LILJEBERG, Judge.
|2In this medical malpractice case, plaintiff, Rommel Mladenoff, appeals the trial court’s judgment, rendered in accordance with the jury’s verdict, finding that plaintiff failed to establish the applicable standard of care by a preponderance of the evidence and dismissing plaintiffs case against defendants. For the following reasons, we vacate the trial court’s judgment and remand for a new trial.

FACTS AND PROCEDURAL HISTORY

At approximately 9:05 p.m. on June 22, 2007, Rommel Mladenoff, a 34-year-old male, presented to the emergency room at East Jefferson General Hospital complaining of right side lower abdominal pain for the previous three days, as well as nausea, vomiting, and diarrhea. The emergency room physician diagnosed acute appendicitis, and the diagnosis was confirmed by a *10 CT scan. Dr. Henry Pretus, the on-call surgeon, was consulted via telephone. Dr. Pretus confirmed the | .-¡diagnosis of appendicitis at 1:00 a.m. on June 23, 2007, and he ordered that Mr. Mladenoff be admitted to the hospital for an open appendectomy.
Dr. Pretus, who lived in Baton Rouge, arrived at the hospital at approximately 4:00 a.m. and evaluated Mr. Mladenoff. Mr. Mladenoff executed consent forms for the appendectomy procedure at 4:30 a.m. However, Mr. Mladenoff was not taken to surgery until just after 2:00 p.m. on June 23, 2007.
During the surgical procedure, Dr. Pre-tus observed that Mr. Mladenoffs appendix had ruptured, causing fecal content to spill into his abdomen. His abdominal cavity was cleaned and drains were placed in an effort to avoid infection. Nevertheless, Mr. Mladenoff developed a severe infection and abdominal abscesses, requiring continued care. He also developed secondary complications including pulmonary emboli in his lungs, which required further treatment and monitoring. Mr. Mladenoff was discharged on August 13, 2007, but he continued with home wound care, and he claims that he still suffers from the injuries he sustained due to the rupture of his appendix.
A medical review panel was convened at Mr. Mladenoffs request, and in its opinion dated September 8, 2010, the panel concluded that Dr. Pretus failed to comply with the appropriate standard of care due to the 13-hour delay between the diagnosis of an acute appendicitis and the commencement of surgery. The medical review panel also stated that it was unable to answer the questions of causation and damages, finding that Mr. Mladenoffs appendix had likely ruptured prior to his arrival at the hospital and noting Mr. Mla-denoffs delay in seeking hospital attention after being informed of his suspected appendicitis.
On January 6, 2011, Mr. Mladenoff filed this lawsuit against Dr. Pretus, his professional liability insurer, Louisiana Medical Mutual Insurance Company (“LAMMICO”), and Henry R. Pretus, M.D., Ph.D., APMC, as Dr. Pretus’ |4employer. In his petition, Mr. Mladenoff asserts that Dr. Pretus was negligent and breached the standard of care by allowing a 13-hour delay between the diagnosis of appendicitis and the commencement of surgery, resulting in the rupture of his appendix, a severe infection, and further complications.
A jury trial began on February 19, 2013, and concluded on February 22, 2013, with a verdict rendered in favor of defendants, Dr. Pretus, LAMMICO, and Henry R. Pretus, M.D., Ph.D., APMC. The first question on the jury interrogatory form asked if plaintiff “established by a preponderance of the evidence the standard of care applicable to this case.” The jury replied, “No.” Thus, no further questions on the jury interrogatory form were reached, such as breach or causation. On March 4, 2013, the trial judge rendered a judgment in accordance with the jury’s verdict, dismissing Mr. Mladenoffs claims against defendants with prejudice. Mr. Mladenoff appeals.

LAW AND DISCUSSION

On appeal, Mr. Mladenoff contends that the jury was manifestly erroneous in finding that he did not prove the applicable standard of care by a preponderance of the evidence. He asserts that he presented competent expert testimony of the applicable standard of care at trial and that no competent evidence was offered to challenge the standard of care proven by plaintiff in this matter. Defendants respond that the jury correctly found that plaintiff did not establish the appropriate standard of care. They claim that plaintiffs pro *11 posed standard of care, “as soon as possible,” is merely a platitude, which is a general statement that has no meaning.
A jury’s finding of fact may not be set aside unless it is manifestly erroneous or clearly wrong. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1111 (La.1990); Jackson v. Tulane Medical Center Hosp. and Clinic, 05-1594, p. 5 (La.10/17/06), 942 So.2d 509, 512. In order to reverse a jury’s determination of fact, |san appellate court must review the record in its entirety and find that: 1) a reasonable factual basis does not exist for the jury’s finding; and 2) the record establishes that the fact finder is clearly wrong. Stobart v. State, through Department of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The manifest error rule applies in appeals of medical malpractice actions. Sumter v. West Jefferson Medical Center, 02-1103, p. 4 (La.App. 5 Cir. 4/29/03), 845 So.2d 1179, 1181, writ denied, 03-1484 (La.9/26/03), 854 So.2d 367; Rebstock v. Hospital Service Dist. No. 1, 01-659, p. 4 (La.App. 5 Cir. 11/27/01), 800 So.2d 435, 437, writ denied, 02-0077 (La.3/15/02), 811 So.2d 914.
LSA-R.S. 9:2794(A) provides that in order to establish a medical malpractice claim, the plaintiff has the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar- circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Thus, the plaintiff must establish by a preponderance of the evidence the defendant’s standard of care, a violation by the defendant of that standard of care, and a causal connection between the defendant’s breach of the standard of care and the plaintiffs injuries. Pfiffner v. Correa, 94-924, 94-963, 94-992 (La.10/17/94), 643 So.2d 1228, 1233; Newsom v. Lake Charles Memorial Hosp., 06-1468, p. 3 (La.App. 3 Cir. 4/4/07), 954 So.2d 380, 384, writ denied, 07-0903 (La.6/15/07), 958 So.2d 1198; Marroy v. Hertzak, 11-0403, p. 5 (La.App. 1 Cir. 9/14/11), 77 So.3d 307, 311.
In the present case, plaintiff presented the testimony of Dr. Michael Leitman, a board-certified general surgeon with added qualifications in surgical critical care. Dr. Leitman testified that when a patient presents with appendicitis and the decision is made to treat with surgery, the surgery should be carried out “as soon as possible.” He stated that “as soon as possible” to him means as soon as a surgeon can get an operating room, anesthesia team, and nursing team together to care for the patient properly. Dr. Leitman opined that in most large hospitals, a surgical team can be assembled and an appendectomy procedure can commence within a few hours. He further testified that a delay in taking *12 the patient to surgery means that the surgeon is risking the safety of the patient. He also referred to the standard of care for general surgeons treating appendicitis as “decision to incision without delay.”
Plaintiff also presented the testimony of Dr. Julius Levy, who was a member of the medical review panel and a board-certified general surgeon. Dr. Levy practiced general surgery for about 50 years in the New Orleans area, and he has treated appendicitis on numerous occasions during his career. Dr. Levy testified that the standard of care in the case of appendicitis is to perform the operation “as soon as is reasonably possible” once the decision to operate has been made. He stated that appendicitis is not an emergency that requires surgery immediately after the patient arrives at the hospital, but it is an operation that should certainly be done without undue delay. Dr. Levy opined that waiting over 13 hours to begin surgery after a diagnosis of appendicitis was a breach of the standard of care.
17At trial, even Dr. Pretus, defendant herein, agreed that once the decision is made to treat appendicitis surgically, it should be performed “as soon as possible” and “without delay.” He testified that he requested that plaintiffs surgery commence “as soon as possible,” which meant to him that surgery would proceed as soon as an operating team, anesthesiology team, and operating room were available. Dr. Pretus testified that there is no defined time to commence an appendectomy once the decision is made to operate, but his training has taught him that it should be performed “as soon as possible.”
Defendants’ expert in general surgery, Dr. Yi-Zarn Wang, testified regarding other methods of treatment for appendicitis as alternatives to surgery, such as antibiotics. He stated that there is no consensus in the medical community on a time limit to perform an appendectomy. However, Dr. Yang admitted that doctors who believe that appendicitis should be treated with surgery try to perform the surgery “as soon as possible.” He also testified that based on his experience and the medical literature, he did not agree with the opinion of the medical review panel that Dr. Pretus breached the standard of care.
The record contains ample evidence presented at trial regarding the applicable standard of care. Dr. Leitman indicated that the standard of care is “as soon as possible” or “decision to incision without delay,” which basically have the same meaning. Dr. Levy testified that after a diagnosis of appendicitis, surgery should be performed “as soon as is reasonably possible.” Even Dr. Pretus agreed that surgery should be performed “without delay’ or “as soon as possible” after a diagnosis of appendicitis. Finally, while Dr. Wang prefers some non-surgical methods of treatment for appendicitis, he admitted that doctors who typically treat appendicitis with surgery try to do so “as soon as possible.” Although none of the experts stated a specific amount of time within which surgery should be performed, they generally |sagreed that it should be done “as soon as possible” which requires consideration of the particular circumstances of each case.
After thorough examination of the entire record and considering the applicable law, we find that sufficient evidence was presented to the jury to establish the standard of care owed by Dr. Pretus to Mr. Mladenoff. A reasonable factual basis does not exist to support the jury’s finding that Mr. Mladenoff did not prove the applicable standard of care by a preponderance of the evidence; therefore, the jury’s finding was clearly wrong. Accordingly, we vacate the jury’s verdict and the trial *13 court’s judgment rendered in accordance with the verdict.
Generally, when a jury verdict is reversed due to a material error but an otherwise complete trial record exists, an appellate court should, if it can, render judgment on the record. Jones v. Black, 95-2530 (La.6/28/96), 676 So.2d 1067; Gonzales v. Xerox, 254 La. 182, 320 So.2d 163, 165 (1975). However, when a view of the witnesses is essential to a fair resolution of conflicting evidence, the appellate court should remand to the trial court for a new trial. Jones, supra.
In the instant case, after a thorough review of the entire record, we find that this case is one in which a view of the witnesses is essential to a fair resolution of the evidence and issues. Accordingly, we remand the case to the trial court for a new trial.

DECREE

For the foregoing reasons, we vacate the trial court’s judgment dismissing plaintiffs claims against defendants, and we remand the case for a new trial on the merits.

JUDGMENT VACATED; REMANDED.

WICKER, J., Concurring in Part, and Dissenting in Part, With Reasons.
MURPHY, J., Dissents With Reasons.