MARC E. JOHNSON, Judge.
| sPlaintiffs/Appellants, Dayna Montz and Dwayne Montz, appeal the dismissal of their medical malpractice action with prejudice in favor of Defendant/Appellee, Dr. Katherine Williams, from the 40th Judicial District Court, Division “A”. For the following reasons, we vacate the jury verdict, reverse the dismissal of Appellants’ action, and remand the matter for a new trial.
FACTS AND PROCEDURAL HISTORY
Mrs. Montz was a patient who had a complicated and extensive gynecological history with continual pelvic complaints and connected low back pain prior to presenting to Dr. Williams for treatment in May of 1999. Mrs. Montz’s medical history at the time consisted of two Caesarean Sections, a cholecystectomy, tubal ligation and two laparoscopic lysis procedures to remove adhesions. During one of her Caesarean Sections, Mrs. Montz sustained a bladder laceration that required repair and the placement of a suprapubic catheter.
On May 21, 1999, Mrs. Montz was seen by Dr. Williams for chronic pelvic pain. Dr. Williams recommended a total hysterectomy as a course of treatment, to | 4which Mrs. Montz agreed. Prior to surgery, Dr. Williams consulted Dr. Brian Brogle, a urologist, about Mrs. Montz’s previous bladder injury. Dr. Brogle advised Dr. Williams there would be a 70-80% chance that Mrs. Montz’s bladder would be re-injured during the hysterectomy.
Dr. Williams performed a total abdominal hysterectomy and bilateral salpingo-oophorectomy on Mrs. Montz on May 31, 1999. During the procedure, Mrs. Montz’s bladder was injured. Dr. Williams called Dr. Clay Boyd, the urologist on call, for an intraoperative consult and to perform the repair of Mrs. Montz’s bladder. As a result of the re-injury to her bladder, Mrs. Montz developed a vesicovaginal fistula. Subsequently, Mrs. Montz had to undergo several surgeries and/or procedures to repair the damage that occurred during the hysterectomy.
A medical review panel was convened at the request of Appellants. In an opinion *1151 rendered on April 14, 2013, the panel concluded that the evidence did not support the conclusion that Dr. Williams failed to meet the applicable standard of care as charged in the complaint. The panel reasoned that Mrs. Montz was adequately informed and the bladder' injury was a known complication of the hysterectomy.
On June 18, 2003, Appellants filed their “Petition'for Personal Injuries and Damages” against Dr. Williams, alleging Dr. Williams committed medical malpractice and was negligent in her pre-operative and operative treatment of Mrs. Montz. A trial on the matter was held from July 21, 2014 through July 25, 2014 before a jury. At the conclusion of, the ' trial, the jury rendered a verdict finding that Appellants did not prove the standard of care applicable to Dr. Williams regarding the treatment of Mrs. Montz by answering, “No,” to the first question, on the verdict form. No further questions on the verdict form were reached by the jury. |BOn August 18, 2014, the trial court rendered a “Final Judgment and Order of Dismissal” that dismissed Appellants’ action against Dr. Williams with prejudice.
Appellants filed a “Motion for Judgment Notwithstanding the Verdict or, Alternatively, Motion for New Trial,” asserting the jury erred in finding the applicable standard of care was not established. A hearing on the motion-was held on September 19, 2014. In a judgment rendered on. October 20, 2014, the trial court found no reason to disturb the jury’s verdict and denied the motion. The instant appeal followed.
ASSIGNMENT OF ERROR
On appeal, Appellants’ sole assignment of error alleges the trial court erred in entering a judgment that found they failed to establish'the applicable standard of care by a preponderance -of the evidence and, subsequently, dismissing their action.
LAW AND ANALYSIS
Appellants allege the jury’s finding that they failed to establish -the applicable standard of care, for Dr. Williams in her treatment of Mrs. Montz by a preponderance of the. evidence was manifestly erroneous. Appellants argue the record -clearly establishes they presented evidence that -the applicable standard of care was informed consent pursuant to La. R.S. 40:1299.4o.[1] While the experts disagreed as to whether Dr. Williams breached the standard of care, Appellants contend the expert testimony established that informed consent was the applicable pre-operative standard of care. Appellants further contend that since Dr. Williams failed tq inform Mrs. Montz of the material , risks involved with the hysterectomy and the alternative therapies to the surgery, the evidence they presented regarding the lack of informed consent supported those allegations. Appellants maintain that the issue of whether they established the standard of care is different from the issue |fiof whether Dr. Williams actually breached that standard of care, and the jury should have found in their favor on whether the standard of care was established.
In Mladenoff v. La. Med. Mut. Ins. Co., 13-477 (La.App. 5 Cir. 3/26/14); 139 So.3d 8, 11, writ denied, 14-862 (La.6/20/14), 141 So.3d; 813: this Court thoroughly explained the standard of reviewing a jury determination -on the standard of care in a medical malpractice, action by stating, the following:
*1152 A jury’s finding of fact may not be set aside unless it is manifestly erroneous. In order to reverse a jury’s determination of fact, an appellate court must review the record in its entirety and find that: 1) reasonable factual basis does not exist for the jury’s finding; and 2) the record establishes that the fact finder is clearly wrong.- The manifest error rule applies in appeals of medical malpractice actions.
LSA-R.S. 9:2794(A) provides that in order to éstablish a medical malpractice claim, the plaintiff has the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence-raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, long with his best judgment in the , application of that skill. '
(3) That' as a proximate result of this lack -of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that - would not otherwise have been incurred.
Thus, the plaintiff must establish by a preponderance of the evidence the defendant’s standard of care, a violation by the defendant of that standard of care, and a causal connection between the de- • fendant’s breach of the standard of care and the plaintiffs injuries.
17(Internal citations omitted).
In the case at bar, Appellants presented the testimony of Dr. Kevin Stephens, a board certified obstetrician and gynecologist who had been appointed to. various advisory boards, as an expert in the field of obstetrics, and gynecology. Dr. Stephens testified that a doctor who does not inform a patient of specific risks associated with surgery cannot give an adequate consent form to the patient.- When asked about the standard of care, Dr. Stephens provided the following testimony: . ,
Q. And that is what was required to meet the standard of care to ascertain where is pain [is]' coming from to give her [] informed information regarding whether the surgery would' benefit her or how much benefit she would get and if it would benefit her at all. You agree withthat?
A. Yeah. That’s correct.
. Q. And failure to do that[ ] -is[,] basically, in order to get that informed consent. If you fail to do that, you fail the standard of care for informed consent. Do you agree with that?
A. If you don’t explain the material risks and benefits of a procedure, which will include potential complications, which would include the potential for not fixing the problem, then you have not done an adequate consent. Yes.
>Dr. Stephens further testified:
Q. And failure to advise the patient, if the jury believes, that the patient was not advised of this, is this a malpractice or not?
*1153 A. That is a deviation below the standard of care that you must tell the patients of all reasonable risks. There was ■ a high risk of'injury to the bladder, as she has a history of an incidental cysto-tomy with a previous surgery and omen-tal flap, you must inform the patient of that 'risk of recurrent, repeat injury to the bladder.
Q. And failure to do that is a malpractice?
A. Failure to do that is a deviation below the standard of care.
While they disagreed with Appellants that Dr. Williams breached the standard of care, Dr. Williams’s experts, Dr. Paul Fuselier (an expert in obstetrics and gynecology) and Dr. Ralph Chesson (an expert in obstetrics and gynecology Rand urogy-neeology), each testified that Mrs. Montz properly consented to the hysterectomy. Additionally, the medical panel opinion found Dr. Williams did not breach the standard of care by’ first reasoning that Mrs. Montz was adequately informed. Moreover, in an attempt to simplify the matter for the jury, trial counsel for Appellants explained in his closing statement that there were multiple breaches, not just one, of the standard of care, and those breaches caused harm and damages to Appellants.
After review of the entire record and the applicable law, we find that sufficient evidence, particularly through the expert testimony of both sides and the medical panel opinion, was presented to "the jury to establish that the standard of care owed by Dr. Williams to Mrs. Montz was informed consent. A reasonable factual’ basis does not exist to support the jury’s finding that Appellants did not prove the applicable standard of care of informed consent by a preponderance of the evidence; therefore, the jury’s finding was clearly wrong.
In Mladenoff, supra, this Court reviewed a similar jury verdict in a medical malpractice action. In that matter, the first question presented to the jury was whether the applicable standard of care regarding the removal of the plaintiffs appendix was established. During the trial, the plaintiff presented expert testimony that the standard of care‘in the case of appendicitis is to perform the" operation “as soon as possible,” while the defendants presented testimony that alternatives to surgery could have been used to treat the plaintiff. After deliberation, the jury replied, “No,” to the first question, finding that the plaintiff failed to prove the applicable standard of care. After review of the evidence presented on appeal, this Court found that sufficient evidence was presented as to the applicable standard of care owed to the plaintiff; Although the record was complete for review on appeal, the matter was remanded to the trial court for a new trial on the basis that a view of lathe witnesses was essential to a fair resolution of the evidence and issues. Id. at 13. (Citations omitted).
In following Mladenoff, we vacate the jury verdict and remand the matter to the trial court for a new trial because this is a case in which a View of the witnesses is essential to a fair resolution of the evidence and issués.
DECREE
For the foregoing reasons, we vacate the jury .finding that Appellants failed to prove the applicable standard of care and reverse the dismissal of Appellants’ action with prejudice. We remand the matter for *1154 a new trial. Dr. Williams is assessed the costs of this appeal.
MURPHY, J., concurs with reasons.

. La. R.S. 40:1299.40 has been repealed; however, it was the law in effect at the time of Mrs. Montz’s procedure.