JUDE G. GRAVOIS, Judge.
12Plaintiffs have appealed the trial court’s grant of defendant’s motion for an involuntary dismissal of their case. For the reasons that follow, we affirm.

PROCEDURAL BACKGROUND AND FACTS

On October 18, 2007, plaintiffs, Connie and Anthony Christiano, filed suit against Southern Scrap Material Co., LLC[1] (“Southern Scrap”).[2] The petition alleged that on October 19, 2006, plaintiffs were customers at Southern Scrap’s facility in *1061 Westwego, Louisiana, when Mrs. Christi-ano fell after encountering a slippery substance on a pedestrian walkway. The petition alleged that the accident was unavoidable and unforeseeable and was caused by the fault and negligence of Southern Scrap for failing to provide clean and safe walkways. The petition also alleged that Southern Scrap knew or should have known of the hazard and failed to | .¡correct the hazard, and that Southern Scrap failed to inspect, maintain, clean or repair the walkway.
Southern Scrap answered the petition with a general denial and specifically asserted that the accident was the fault of the victim who failed to see what she should have seen and failed to look where she was going.
After pre-trial discovery and hearings were conducted, the matter eventually proceeded to a one-day judge trial.
At trial, Mrs. Christiano testified that on the day of the accident, she went to Southern Scrap to sell aluminum cans. She was driving a pickup truck which she backed up against a hopper.[3] As she was transferring the cans into the hopper, one of her cans fell to the ground. She described the area where the can fell as “a little sloppy.” She described the “slop” where the can fell as “oil and some other kind of substance” which looked like it had been there for some time. After the can fell, she “looked around to make sure that [she] could step from there to pick up the can. And [she] saw some dry mud,” expounding that the mud was dry because it was “cracked and clay and muddy.” This mud was on top of the cement. The cement around the mud was dry. When she went to pick up the can, Mrs. Christiano was careful only to walk on the dry mud; she did not step in the “slop” by the can. In explaining the cause of her slip and fall, she testified as follows: “It was wet underneath the mud. It was like some more slop, but you couldn’t see it just by looking at it. It was like it was dry.” She stated that there was “slop” underneath the dried mud. When she stepped on the dried mud, “it gave way and made [her] slide,” causing her fall. There were no signs or other notifications in the area to indicate that the area was dangerous to walk on.
|4Mrs. Christiano had been going to Southern Scrap to sell cans every two to three months for six years. At no time had she ever seen anyone hosing or cleaning the cement in the area where she fell. She admitted that she did observe Southern Scrap personnel picking up cans off the ground in this area. She confirmed that she had seen dried mud on the cement in this area on other occasions, but this was the first time that she had stepped on any of the dried mud.
On cross-examination, Mrs. Christiano admitted that on the day of the accident, the weather was clear and that it had not been raining. She explained that she was looking down the entire time as she walked around to the side of the hopper to retrieve the can that had fallen in the “slop.” There was an area of dried mud behind the fallen can that was approximately three feet long and two feet wide. In order to reach the fallen can, Mrs. Christi-ano stated that she could not have avoided the dried mud. She stated that the mud appeared thick enough and sturdy enough for her to walk on. Although there was “slop” next to the dried mud, she did not think or know that there was “slop” underneath the dried mud. She placed one foot on the dried mud, and when she went to place her other foot on the dried mud, it *1062 gave way and she slipped and fell. She fell on her butt and injured her wrist in the fall. She admitted that there were no holes or cracks on the cement; rather, it was the “slop” and mud that caused her to fall.
Mrs. Christiano admitted that she could have asked a nearby employee of Southern Scrap (identified as “Leroy Carter”) to retrieve the fallen can, but did not do so because he was busy with other people who had come to sell cans. She admitted that she did not know how long the mud had been there, but estimated that it was there “longer than a day” because “it was all dried up.” She did not know how the mud or the “slop” got on the side of the hopper.
|BAnthony Christiano, Mrs. Christiano’s husband, testified that he was also putting cans in the hopper when Mrs. Christiano fell. He stated that he had listened to her testimony at trial and that he agreed with her testimony as to how the accident occurred.[4]
Plaintiffs then rested their case, at which point Southern Scrap moved for an involuntary dismissal of the case pursuant to Louisiana Code of Civil Procedure article 1672(B). Southern Scrap argued that in order to prevail, plaintiffs had to prove that Southern Scrap had custody and control of the premises (which Southern Scrap admitted), that Southern Scrap was negligent or acted unreasonably in failing to keep the premises clean, and that Southern Scrap knew or should have known of the dangerous condition. Southern Scrap argued that if the condition was open and obvious, plaintiffs could not prevail. Southern Scrap asserted that plaintiffs had not proved that Southern Scrap had actual knowledge or constructive knowledge of the alleged dangerous condition, and that there was no evidence as to where the “slop” came from or how long it had been present. Southern Scrap further argued that plaintiffs failed to prove that Southern Scrap did not conduct reasonable inspections, and that plaintiffs admitted that the can fell into an area with oil and mud and that Mrs. Christiano voluntarily stepped into that dangerous area. It further argued that Mrs. Christiano admitted that she could have stepped in another area, could have grabbed on to the side of the hopper, or could have asked Southern Scrap’s employee, Mr. Carter, for assistance.
Plaintiffs’ counsel responded that the dangerous condition in question was not open and obvious, that Mrs. Christiano acted reasonably, and that she was | ^presented with a “hidden trap,” something that she could not see. Plaintiffs also pointed out that Mrs. Christiano’s testimony was not rebutted. Plaintiffs argued that Southern Scrap could not and did not produce documents showing the existence of any cleanup policies or procedures — thereby admitting that no such documents exist. Plaintiffs further argued that Southern Scrap had a duty to protect and warn Mrs. Christiano and that it breached that duty.
Defense counsel responded that plaintiffs had the burden of proof and failed to *1063 prove there was a lack of inspection procedures. Counsel further argued that plaintiffs also failed to prove exactly where Southern Scrap’s employee, Mr. Carter, was located at the time of Mrs. Christi-ano’s fall, and whether or not he was in a position to warn plaintiffs. Counsel reiterated that the alleged danger was open and obvious.
The trial court agreed with Southern Scrap’s position and granted the motion for involuntary dismissal, stating that because there was “a small patch of some dried mud on top of some other mud that clearly is next to slop, it’s not unusual to assume that the slop is also underneath that part” of the mud. She concluded that the defect was open and obvious. The court further stated that there was no evidence that Southern Scrap was aware of any defect and should have corrected it, nor was there any evidence that Southern Scrap acted negligently in their procedures. This timely appeal followed.

LAW AND ANALYSIS

Louisiana Code of Civil Procedure article 1672(B), which allows for the involuntary dismissal of actions tried by the court without a jury, provides:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right |7to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
The trial court has much discretion in determining whether to grant a motion for the involuntary dismissal of an action. Perkins v. Carter, 09-673 (La.App. 5 Cir. 12/29/09), 30 So.3d 862, 867. An appellate court may not reverse a ruling on a motion for involuntary dismissal unless it is manifestly erroneous or clearly wrong. Id. In determining whether an involuntary dismissal should be granted after the plaintiff has completed the presentation of his evidence during a bench trial, the appropriate standard is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence. Id. The trial court is not required to review the evidence presented in the light most favorable to the plaintiff. Id. The issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Brock v. Singleton, 10-550 (La.App. 5 Cir. 3/29/11), 65 So.3d 649, 660, writ denied, 11-1216 (La.9/23/11), 69 So.3d 1160.
On appeal, plaintiffs argue that the trial court was manifestly erroneous in determining that the “slop,” which caused Mrs. Christiano to slip and fall, was open and obvious to all.
If the facts of a specific case show that the complained-of condition should be open and obvious to all, the condition is not unreasonably dangerous and the defendant may not owe a duty to the plaintiff. Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96), 673 So.2d 585, 591. Generally, a defendant has no duty to protect against an open and obvious hazard. Eisenhardt v. Snook, 08-1287 (La.3/17/09), 8 So.3d 541, 544. In order for a defect to be considered open and obvious, the danger created by that defect must be apparent to all comers. Broussard v. State ex rel. Office of State *1064 Bldgs., 12-1238 (La.4/5/13), 113 So.3d 175, 192. If the complained-of condition should be obvious to all, then it may not be unreasonably dangerous. Id. at 188. The focus on whether an alleged defect is open and obvious is “on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim’s actual or potentially ascertainable knowledge.” Id. Focusing only on the plaintiffs awareness of that risk would undermine comparative fault principles. Id.
Upon review, we find that the trial court’s finding that the alleged defect in the area in which Mrs. Christiano fell was open and obvious to all is well supported by the record. Mrs. Christiano testified that she was being careful when she walked into the area covered with what appeared to be dried mud because that area was surrounded by “slop,” which she described as “oil and some other kind of substance.” She acknowledged that there was “slop” next to the dried mud, but she did not think or know that there was “slop” underneath the dried mud. She admitted that there were no holes or cracks on the cement where she fell; rather, it was the “slop” and mud that caused her to fall. Further, her testimony indicates that she could have requested a nearby employee, Mr. Carter, to assist her in retrieving the fallen can, and that she could have held on to the hopper as she walked into the area in question to retrieve the can. Moreover, Mrs. Christiano’s testimony that she saw the “slop” and took much care to walk on it, supports the trial court’s factual conclusion that this alleged defect was open and obvious to all and that it did not create an unreasonably dangerous condition. Thus, we find that the trial court’s finding that the alleged defect was open and obvious is not manifestly erroneous.
Having found there is a reasonable factual basis in the record for the trial court’s finding that the alleged defect was open and obvious, defendant had no |aduty to protect or warn plaintiff of the alleged defect. Thus, plaintiffs’ arguments regarding the trial court’s failure to apply the “proper negligence standard” and failure to apply comparative negligence analysis are without merit.
Plaintiffs further argue that the trial court erred in “an erroneous application of assumption of the risk.” In this assignment of error, plaintiffs contend that the trial court “suggested that defendant/ap-pellee may have been at fault but barred Mrs. Christiano’s recovery on the ground that she knew of the unreasonable risk created by Southern Scrap’s conduct and voluntarily chose to encounter it.” A clear reading of the transcript indicates that the trial court simply found the alleged defect, i.e., the dried mud covering “slop,” was open and obvious, explaining that there was “a small patch of some dried mud on top of some other mud that clearly is next to slop; it’s not unusual to assume that the slop is also underneath” the dried mud. There is nothing in the record to indicate that the trial court applied a duty-risk analysis. Thus, this argument is without merit.
Further, the trial court found that even if the alleged defect was not open and obvious, plaintiffs presented “no evidence whatsoever that defendant was aware of any kind of defect, and should have corrected it.” Mrs. Christiano admitted that she did not know how the “slop” got there; rather, she attempts to infer that Southern Scrap had knowledge of the “slop” because its employee was in the area. Further, Mrs. Christiano was unable to state how long the “slop” had been present.
The trial court went on to state that there was “no evidence that they acted *1065 negligence [sic] in their procedures.” We find that the record clearly supports this finding. Plaintiffs attempted to carry their burden of proving that Southern Scrap was negligent in their procedures to keep the walkway clean by pointing to the statement in Southern Scrap’s answer to interrogatories that “it is company policy to keep public areas free of debris.” Plaintiffs presented no testimony or 1 ^documentary evidence whatsoever that Southern Scrap was negligent in their procedures to keep the walkways clean. Hence, since there was no evidence that Southern Scrap was negligent, there was no reason for the trial court to apply a comparative fault analysis.

CONCLUSION

After considering the record before us in its entirety under the manifest error standard of review, we find that there is a reasonable basis in the record to support the trial court’s grant of Southern Scrap’s motion for an involuntary dismissal of the case. Accordingly, the judgment of the trial court under review is affirmed.

AFFIRMED.

. Southern Scrap was incorrectly referred to in the petition as "Southern Scrap Recycling.”

. Plaintiff's suit also named Southern Scrap's purported liability insurer, "XYZ Insurance Company”, as a party-defendant. The record does not reflect that plaintiffs ever amended their suit to identify and name as a party-defendant Southern Scrap's actual liability insurer.

. Pictures admitted into evidence and testimony indicates that a hopper is a large open receptacle where the cans were placed in order to be weighed.

. The record reflects that at the time of trial, Mr. Christiano was suffering from some type of heart illness and shortly after being called to the stand, he had difficulty answering questions. When questioned as to whether he was alright, he stated that he was nervous. Cross-examination began and a short break was taken. When questioning resumed, however, Mr. Christiano became nauseated and was handed a trash can. It appears from the record he became ill. After a bench conference, it was agreed that the questioning would stop and Mr. Christiano was released from the stand. Mr. and Mrs. Christiano then left the courtroom.