JUDE G. GRAVOIS, Judge.
| aPlaintiff appeals the trial court’s judgment granting defendant’s motion for involuntary dismissal of his case upon resting after having presented his case-in-chief in this medical malpractice case. For the reasons that follow, we reverse the trial court’s judgment of involuntary dismissal and remand the matter for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

On January 24, 2013, plaintiff, Malcolm Matherne, individually and on behalf of the Estate of Mitzi N. Matherne, filed a petition for damages against Jefferson Parish Hospital District No. 1 d/b/a West Jefferson Medical Center (“West Jefferson”). The medical malpractice action alleged that on September 2, 2010, while Mrs. Matherne, a patient at West Jefferson, was being transferred from either a wheelchair or a bedside commode to her bed, she was only attended by one assistant despite her high fall risk status. The petition alleges that during the transfer, Mrs. Matherne’s leg gave out, and she fell to the floor striking her right knee. Plaintiff alleged that the accident was due solely to the fault and neglect of |sWest Jefferson for failing to provide Mrs. Matherne with the appropriate and necessary degree of care and attention when being transferred. As *299 a result of her fall, Mrs. Matherne suffered from a leg injury which required surgery. She continued to have medical complications, requiring her to remain hospitalized and on bed rest for a prolonged period of time. Mrs. Matherne died on April 29, 2012. Plaintiff alleged that Mrs. Math-erne’s death was a direct consequence of the injuries she suffered at West Jefferson on September 2, 2010. On February 15, 2013, West Jefferson answered the petition asserting that Mrs. Matherne was at fault for failing to wait for assistance before attempting * to move herself unassisted from her bedside commode to her bed.
On February 10, 2014, the matter proceeded to a judge trial. At the beginning of the trial, the parties filed a written joint stipulation concerning the contents of Mrs. Matherne’s medical records.[1] According to the joint stipulation, the medical records established that on August 23, 2010, Mrs. Matherne, age 76, was admitted to West Jefferson due to a very large hematoma on her left calf. The injury was the result of her leg being smashed between her motorized wheelchair and a step on her vehicle. Upon admission, the initial assessment and plan for Mrs. Matherne’s care included, among other things, care of her left lower extremity hematoma, which would be monitored for compartment syndrome, and consultation and care by a dietician for morbid obesity. A fall risk protocol was also established due to Mrs. Matherne’s weakened condition, weakened gait, and history of falls. The fall risk protocol included a bed alarm, a locked and low bed with side rails up, and frequent checks. Her high fall risk status was noted by a yellow band on her wrist, a star on the footboard of her bed, a star over the bed, a |4star sticker on the door to her room, and a star sticker on her chart. All of her activities were to be restricted in accordance with the interdisciplinary patient care plans. While hospitalized, Mrs. Matherne was kept in bed at all times, wore a diaper at all times, and was assisted with a bedpan for voiding needs.
On September 2, 2010, at 10:05 a.m., Mrs. Matherne’s diaper was changed by an attending nurse. At approximately 11:45 a.m., Karen Hepting, a physical therapy assistant, conducted a physical therapy session with Mrs. Matherne. The session concluded at 12:18 p.m., and Mrs. Math-erne was left in her room in a recliner with her legs elevated. A nurse checked on her at 1:35 p.m. The nurse’s notes reflect that the dressing on her leg was changed, and she was left in the recliner with her legs elevated. Her chart reflected no other encounters with hospital personnel until her accident at approximately 2:30 p.m. Following the accident, Mrs. Matherne sustained a fractured femur for which surgery was performed.
At trial, Karen Hepting testified that she provided physical therapy to Mrs. Matherne on September 2, 2010 to help “[mobilize] her out of bed and [work] on walking,” as she was “quite weak and de-conditioned.” Mrs. Matherne was being taught how to walk with a rolling walker, and she received between 16 and 30 minutes of therapy that day. During the session, Mrs. Matherne rose from sitting to standing with “moderate assist,” which means the therapist did 50% of the work and the patient did the other 50% of the work. Mrs. Matherne was able to walk .with the walker for six feet while the therapist was “holding her, had the hand on her to minimal assist, meaning that the therapist had to do some work either to *300 direct the walker or direct the patient while walking.” An aid or helper also followed behind with a chair. After therapy was over, Ms.. Hepting left Mrs. Math-erne in the “reclined bedside chair with needs at hand,” including the call |Bbutton. The records confirm no one else from the physical therapy department attended to Mrs. Matherne after Ms. Hepting left her at approximately 12:18 p.m. Ms. Hepting testified that it was very unlikely that Mrs. Matherne could have collapsed the recliner and gotten up from it herself. Nonetheless, even if she had been able to do that, Ms. Hepting did not believe she could have then taken off her diaper and put herself on the commode.
On cross-examination, Ms. Hepting testified that she was not sure where the commode was located in Mrs. Matherne’s room or if there was even a commode in the room when she was in there. She noted that the bedside commode would have had handles on it that could assist someone in transferring themselves from a seated to a standing position or vice versa. However, on redirect, she testified that it would have been quite difficult for Mrs. Matherne to hold on to those handrails and sit herself down.
Joseph Murray Couey was working as a nursing supervisor at West Jefferson on September 2, 2010. As a nursing supervisor, he oversaw the nursing division as it related to staffing, handled problems within the hospital, responded to emergencies, and dealt with issues involving patients and families. At trial, he testified that Mrs. Matherne was a “fall risk.” According to West Jefferson’s practices and procedures, for safety purposes, she required two people to assist her in moving around. On the day of the accident, he was called to Mrs. Matherne’s room to assist her. When he got to her room, she was still on the floor, as those already helping her could not get her back into her bed. An air lift had to be used to return her to her bed.
After reviewing Mrs. Matherne’s medical records, Mr. Couey noted that prior to the accident, at 1:35 p.m., a nurse had changed the dressing on Mrs. Matherne’s lower left leg and left her in the chair with her legs elevated. From that 16time to the time of the accident at approximately 2:30 p.m., there was no indication in the records that Mrs. Matherne was attended to by any other medical personnel. According to Mr. Couey, it is important for any patient care to be charted. He testified that when teaching nurses about charting, they are taught that if something is not noted in the chart, then it did not happen.
On cross-examination, Mr. Couey stated that patients often attempt transfers on their own without assistance, and it would not have been unusual to find that Mrs. Matherne had transferred herself to the bedside commode without calling for assistance. However, on re-direct, he testified that he did not disagree with Ms. Hept-ing’s testimony that Mrs. Matherne was too weak to move herself off the recliner and to the commode alone.
Plaintiff also called Wendy Parker, Mrs. Matherne’s daughter, to testify at trial. Ms. Parker visited her mother on the morning of September 2, 2010, prior to her physical therapy session. According to Ms. Parker, as of that morning, her mother had not yet started using the bedside commode. She wore a diaper for the majority of the time and would occasionally use the bedpan.
Ms. Parker testified as to what she learned about the accident after her mother called her on the phone following the *301 accident.[2] According to Ms. Parker, her mother told her she was sitting in her chair after therapy and eventually began to call for help, as she was tired and ready to return to bed. When a nurse’s aid, later identified as Denise Davis, came in to help her, Mrs. Matherne insisted that she get help. Instead, Ms. Davis attempted to help Mrs. Matherne by herself, even though Mrs. Matherne continued telling her she needed to go get help. Ms. Davis then grabbed Mrs. Matherne by one arm, and when she did, she fell down. Ms. 17Parker testified that this was to help get Mrs. Matherne from the recliner to her bed.
Denise Davis, a certified nursing assistant (“CNA”), was called to assist Mrs. Matherne on September 2, 2010. At trial, she testified that when she entered the room, Mrs. Matherne was the only person present and was “in the process of arising from a commode.” She could not remember if Mrs. Matherne was all the way up or half-way there, but she was in the process of lifting herself. She did not tell her to sit back down. After she saw Mrs. Math-erne get herself up, she saw her knee start to buckle. Ms. Davis testified that she then rushed to her to try to see if she could support her or catch her. She was unable to support or catch her because of Mrs. Matherne’s size, and Mrs. Matherne fell, landing on top of Ms. Davis and pinning her to the floor. Ms. Davis then had to scream for help.
Prior to entering the room, Ms. Davis knew that Mrs. Matherne required two people to assist her in moving. Ms. Davis admitted at trial that since Mrs. Matherne was a two-person lift, it would not have been proper for her to try to help her off the commode by herself, but she testified that she did not help Mrs. Matherne up and denied violating any hospital rules.
On cross-examination, Ms. Davis testified that she was told to go and assist Mrs. Matherne, but she was not told what Mrs. Matherne needed assistance with. Before Ms. Davis left the witness stand, the trial judge asked her, “if you assisted a patient to a bedside commode or to the bathroom, would that be noted [in the records]?” She responded, ‘Yes, sir.”
Plaintiff also offered and introduced into evidence four - exhibits, including Mrs. Matherne’s medical chart from the day of the accident (Plaintiffs Exhibit “1”), and an “Event Report” concerning the accident (Plaintiffs Exhibit “2”).
IsFollowing Ms. Davis’ testimony, West Jefferson orally moved for an involuntary dismissal. The trial court granted the dismissal, stating that there was nothing in the nursing notes that indicated anyone placed Mrs. Matherne on the bedside commode. The court noted that “apparently if nobody placed her, because they would have had a nurse’s entry, she probably got on there by herself.- It was just like she was trying to get off by herself.” The court concluded that scenario was more probable than not.
The dismissal (with prejudice at plaintiffs costs) was memorialized in a written judgment of the trial court signed on March 7, 2014. On April 24, 2014, plaintiff sought, and on April 29, 2104, was granted, a devolutive appeal from the trial court’s ruling.

LAW AND ANALYSIS

Louisiana Code of Civil Procedure article 1672(B), which governs a motion for involuntary dismissal, provides:
*302 B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
During a bench trial, after the plaintiff has completed the presentation of his evidence, the appropriate standard in determining whether an involuntary dismissal should be granted is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence. Christiano v. S. Scrap Recycling, 13-595 (La.App. 5 Cir. 12/27/13), 131 So.3d 1059, 1063. Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that a fact sought to be proved is more probable than not. Graff v. Jefferson Parish Hosp. Serv. Dist. No. 2, 09-598 (La.App. 5 Cir. 03/23/10), 39 So.3d 685, 689, writ denied, 10-0907 (La.06/18/10), 38 So.3d 331. The trial court is not required to review the evidence presented in the light most favorable to the plaintiff. Christiano, supra.
The trial court has much discretion in determining whether to grant a motion for the involuntary dismissal of an action. Id. An appellate court may not reverse a ruling on a motion for involuntary dismissal unless it is manifestly erroneous or clearly wrong. Id. On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id.
La. R.S. 9:2794(A) provides the burden of proof for a medical malpractice claim. The plaintiff must establish, by a preponderance of the evidence, the applicable standard of care, breach of the standard, and a causal connection between the breach and the plaintiffs injuries. Mladenoff v. Louisiana Med. Mut. Ins. Co., 13-477 (La.App. 5 Cir. 3/26/14), 139 So.3d 8, 11, writ denied, 14-0862 (La.6/20/14), 141 So.3d 813. The occurrence of an injury or accident does not raise a presumption or inference of negligence on the part of the healthcare provider. Boudreaux v. Parnell, 11-631 (La.App. 5 Cir. 4/10/12), 96 So.3d 1181, 1193, writ denied, 12-1057 (La.6/22/12), 91 So.3d 977, citing Galloway v. Baton Rouge General Hospital, 602 So.2d 1003, 1008 (La.1992); La. R.S. 9:2794(C).
Considering the forgoing precepts, this Court must determine whether the trial court was manifestly erroneous or clearly wrong in concluding that under the facts and evidence presented in plaintiffs case-in-chief, plaintiff failed to prove his medical malpractice claim by a preponderance of the evidence.
I ^ASSIGNMENTS OF ERROR
On appeal, plaintiff assigns the following related errors, which we address together:
1. The trial court erred in finding that Mrs. Matherne had moved herself from the recliner to the accident site unassisted when all evidence showed that she was physically incapable of doing so.
2. The trial court erred in relying solely on the absence of a notation in the chart that Mrs. Matherne had been placed on the bedside commode by' *303 West Jefferson staff in reaching the conclusion that she moved herself.
3. Plaintiff proved by a preponderance of the evidence at trial that West Jefferson violated their duty of care to Mrs. Matherne. In this assignment, plaintiff specifically argues that he proved that West Jefferson had a duty to provide Mrs. Math-erne with a two-person assist in all transfers and that at the time of her fall, only one person, CNA, Ms. Davis, assisted Mrs. Matherne in moving.
To reverse a factfinder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State, 92-1328 (La.1993), 617 So.2d 880, 882.
In his oral reasons for judgment, the trial judge decided that due to the lack of any entry in the nurse’s records that Mrs. Matherne had been moved by hospital personnel to the bedside commode, it was more probable than not that she must have moved herself to the bedside commode. The trial judge further found that it “was just like she was trying to get off by herself.”
The only basis the trial judge assigned in his reasons for granting the motion for involuntary dismissal was that because there was nothing in the medical records to indicate that Mrs. Matherne was moved to the bedside commode, she must have moved to the commode on her own. The trial court then apparently assumed that Mrs. Matherne must have been trying to get up from the commode on her own when she fell as Ms. Davis entered the room. Though there is no indication in Mrs. Matherne’s chart that any hospital personnel moved her to the | n bedside commode, we find that such lack of documentation in and of itself does not prove by a preponderance of the evidence that the hospital was without fault, especially in light of other definitive evidence of the hospital’s fault in the record, as noted below.
The evidence plaintiff presented strongly suggests that Mrs. Matherne was totally incapable of moving by herself, thus clearly and unequivocally contradicting the trial court’s finding and assumption. Ms. Hept-ing, the physical therapist who spent close to 30 minutes with Mrs. Matherne just a couple of hours before her accident, testified that she assisted Mrs. Matherne on the day of the accident in order to help her “[work] on walking.” On the day of the accident, Mrs. Matherne was only able to walk six feet with the assistance of Ms. Hepting, a walker, and someone following behind with a chair. Ms. Hepting testified that she did not believe Mrs. Matherne was capable of moving herself without assistance.
Further, in direct contradiction to the trial court’s finding and assumption, Mrs. Matherne’s medical chart (Plaintiff’s Exhibit “1”) contains the following entry concerning Mrs. Matherne’s accident: “Called to room CNA Denise Davis. Found patient on floor. CNA assisted [patient] back to bed from [bedside commode]. Stated they were a [sic ] very close to bed when the patient’s [right] knee buckled .... ” (Emphasis added.) Though there is no notation in her chart that Mrs. Matherne was moved to the commode, this notation clearly indicates that Mrs. Math-erne was being assisted by Ms. Davis to her bed without outside assistance when Mrs. Matherne’s fall occurred, in direct violation of the hospital’s stipulated fall risk protocol.
*304 This notation in Mrs. Matherne’s medical chart also directly contradicts Ms. Davis’ trial testimony. At trial, Ms. Davis testified that when she entered Mrs. Math-erne’s room, she was arising from the commode, and before she could stop |12her, Mrs. Matherne started moving. When Mrs. Matherne’s knee started to buckle, Ms. Davis rushed to her to try to support her or catch her. When Ms. Davis went to try and catch her, Mrs. Matherne landed on top of her, pinning her to the floor. Ms. Davis screamed for help.
Ms. Davis’ trial testimony is also inconsistent with what was reported in the Event Report submitted as Plaintiffs Exhibit “2”. According to the Event Report, after she “assisted” Mrs. Matherne to the floor, Ms. Davis “left [Mrs. Matherne] sitting [on the floor,] opened the door and called for help.”
In light of the noted testimony and evidence presented in plaintiffs case-in-chief, we find that a reasonable factual basis does not exist for the noted finding and assumption of the trial court, and the trial court committed manifest error and was clearly wrong in granting defendant’s motion for involuntary dismissal. Rather, we find that plaintiff established by a preponderance of the evidence that West Jefferson was at fault for failing to provide Mrs. Matherne with the appropriate and necessary degree of care and attention when being transferred. The testimony of Ms. Hepting, the notes in the medical records, as well as the inconsistencies in Ms. Davis’ testimony, present sufficient evidence to meet plaintiffs burden of proof by a preponderance of the evidence and warranted against an involuntary dismissal of plaintiffs case.

CONCLUSION

For the foregoing reasons, we reverse the trial court’s grant of defendant’s motion for involuntary dismissal, and remand the matter for further proceedings consistent with this opinion.[3]

REVERSED AND REMANDED

. According to the joint stipulation, the parties agreed to a bifurcated trial, with the liability phase to be conducted first, followed by the damages phase. The parties did not stipulate as to the cause of Mrs. Matherne’s leg injury.

. Defendant objected to this testimony as hearsay. Plaintiff argued that the testimony fit two hearsay exceptions: excited utterance and statements for the purpose of medical diagnosis and treatment. The trial judge did not think either exception applied, but nevertheless allowed the testimony, noting that he could "sort it out."

. Obviously, on remand, the trial of this matter should continue where it left off, with defendant being given full opportunity to present its defense to plaintiff's claims.