JOHNSON, J.
Plaintiff/Appellant, The Center for Constitutional Rights (hereinafter referred to as "TCCR"), appeals the involuntary dismissal of its petition for writ of mandamus in favor Defendant/Appellee, Sheriff Greg Champagne, from the 29th Judicial District Court, Division "C". For the following reasons, we reverse and render judgment.
*982 FACTS AND PROCEDURAL HISTORY
On September 18, 2017, TCCR sent a request to the Custodian of Records at the St. Charles Parish Sheriff's Office (hereinafter referred to as "the Sheriff's Office"), pursuant to the Louisiana Public Records Law, La. R.S. 44:1 et seq. TCCR requested copies of any and all public records regarding nine categories. Specifically, information regarding Sheriff Greg Champagne's trip to North Dakota in October 2016 in response to the protests against the Dakota Access Pipeline Project, any travel by the employees of the Sheriff's Office to North Dakota in connection with the Dakota Access Pipeline and/or protests against it, and all records and communications relating to the Sheriff's Office's implementation of the Emergency Management Assistance Compact (hereinafter referred to as "EMAC") signed by Governor John Bel Edwards on June 19, 2016 and activities undertaken by the Sheriff's Office pursuant to the EMAC was requested by TCCR.
On October 17, 2017, Captain Maurice Bostick, the Director of Business and Legal Affairs for the Sheriff's Office, sent certified copies of approximately 60 pages of records to TCCR in response to the request. The correspondence accompanying the certified copies simply stated, "Enclosed please find certified copies of the records responsive to your request." TCCR replied to Captain Bostick regarding the records on October 27, 2017, stating the records supplied by the Sheriff's Office were insufficient and requested information about the specific searches conducted for the records. When it received no response from the Sheriff's Office concerning its October 17th letter, TCCR filed a "Petition for Writ of Mandamus under the Louisiana Public Records Act" on December 13, 2017.
In its petition,[1] TCCR alleged that Sheriff Champagne, in his official capacity as Sheriff and custodian of records for St. Charles Parish, and the Sheriff's Office violated the public records act when they failed to adequately respond to the September 18, 2017 request. The petition specifically alleged that the response was silent as to the records concerning requests one, three, four, five, six and seven, and the response did not indicate whether the records were being withheld pursuant to a statutory exemption. TCCR sought to have a writ of mandamus issued that would direct Sheriff Champagne and the Sheriff's Office to disclose the requested records and attorney's fees, costs, damages, and civil penalties.
In response to the petition, on December 27, 2017, Sheriff Champagne filed a peremptory exception of no cause of action and a dilatory exception of lack of procedural capacity. In his brief, Sheriff Champagne argued that, in his official capacity, he was the proper person to be sued and was the person against whom the cause of action arose, not the entity of the Sheriff's Office, and TCCR-a foreign entity to the State of Louisiana-did not have the legal capacity to file the petition for writ of mandamus. Sheriff Champagne also filed a motion to strike, seeking to strike portions of TCCR's petition that were claimed to contain irrelevant and politically charged allegations. On the same date, Sheriff Champagne also filed an "Opposition to Petition and Amended Petition for Writ of Mandamus under Louisiana Public Records Act," asserting that no contradictory hearing was necessary to summarily dismiss TCCR's petition; many of the requested documents were not public records; and the custodian of records is not *983 required to speculate as to the nature and scope of the requests to determine if they exist.
The exceptions, motion to strike, and trial were heard on January 3, 2018. Prior to the start of the trial, the parties stipulated to dismiss the Sheriff's Office from the action. The trial court overruled the exception of lack of procedural capacity on the basis that TCCR transacted business in this state. It then granted Sheriff Champagne's motion to strike paragraphs from TCCR's petition.
Once the trial commenced, TCCR presented the testimonies of Sheriff Champagne, Captain Bostick, and Captain Patrick Yoes, the Commander of the Special Services Division for the Sheriff's Office. At the conclusion of the TCCR's case-in-chief, Sheriff Champagne orally moved for an involuntary dismissal of TCCR's petition arguing TCCR's request failed to meet the requirements of the public records act. The trial court granted the motion, finding Sheriff Champagne demonstrated a substantial degree of compliance with the public records request, and dismissed TCCR's action. In a written judgment rendered on January 3, 2018, the trial court sustained the exception of no cause of action and dismissed all of TCCR's claims against the Sheriff's Office; overruled the exception of lack of procedural capacity; struck paragraphs 1-7 from TCCR's petition; granted Sheriff Champagne's oral motion for involuntary dismissal and dismissed TCCR's petition for writ of mandamus against him; and cast all of the costs on TCCR. The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, TCCR alleges the trial court erred in: 1) finding that Sheriff Champagne complied with its obligation under the Louisiana Public Records Act; 2) dismissing the action against Sheriff Champagne and not requiring him to produce receipts and other documentation related to the official, work-related travel of the Sheriff's Office personnel; and 3) dismissing the action without requiring Sheriff Champagne to conduct a further search for responsive records, in light of the evidence that additional records existed at one point in time.
LAW AND ANALYSIS[2]
Involuntary Dismissal Law
In an action tried before a judge, after the plaintiff has completed the presentation of his evidence, any party-without waiving his right to offer evidence in the event the motion is not granted-may move for a dismissal of the action as to him on the basis that the plaintiff failed to show his right to relief based upon the facts and the law. La. C.C.P. art. 1672(B). The court may then determine the facts and render judgment in favor of the moving party and against the plaintiff, or it may decline to render any judgment until the close of all the evidence. Id.
To avoid an involuntary dismissal of his action, the plaintiff must establish his claim by a preponderance of the evidence. Smith v. Warren , 18-453 (La. App. 5 Cir. 8/6/18), 253 So.3d 260, 263, citing Christiano v. S. Scrap Recycling , 13-595 (La. App. 5 Cir. 12/27/13), 131 So.3d 1059, 1063. In considering whether the plaintiff has met this burden, the trial court is not required to review the evidence presented in the light most favorable to the plaintiff. Id. The trial court is vested with much discretion when ruling on a motion for *984 involuntary dismissal, and a reviewing court may not reverse the ruling on a motion for involuntary dismissal, unless the ruling is manifestly erroneous or clearly wrong. Id. The issue to be resolved on appeal is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Christiano , supra , citing Brock v. Singleton , 10-550 (La. App. 5 Cir. 3/29/11), 65 So.3d 649, 660, writ denied 11-1216 (La. 9/23/11), 69 So.3d 1160.
Production of Receipts and Documentation
TCCR alleges the trial court erred in finding that Sheriff Champagne complied with the public records request, dismissing the action against Sheriff Champagne, and not requiring him to produce receipts and other documentation related to the official, work-related travel of the Sheriff's Office personnel. It argues that the receipts and supporting documentation relating to the official travel by the Sheriff's Office personnel to North Dakota are public records-as defined in the Louisiana Public Records Law-and were withheld by Sheriff Champagne; therefore, they should have been produced in response to the request. TCCR contends that the trips made by the employees of the Sheriff's Office were made pursuant to the EMAC-based upon agreements between the states of Louisiana and North Dakota-and authorized by Sheriff Champagne, and are public records because they concern the receipt or payment of any money received or paid under the authority of this State. It further contends that, while Sheriff Champagne produced some documentation that contained a listing of the expenses at issue, there is nothing that exempts Sheriff Champagne from producing copies of the actual receipts and other supporting documentation.
Sheriff Champagne argues the trial court correctly ruled that he complied with the request for public records. He avers that TCCR was never denied the right to inspect, copy, reproduce, or obtain reproduction of the public records of the Sheriff's Office. Sheriff Champagne maintains that he went to North Dakota as a member of the National Sheriff's Association and the employees sent to North Dakota were deputized by the Morton County Sheriff's Office in North Dakota; thus, he was not obligated and/or authorized to produce copies of those entities' records. He further avers that the requests of TCCR were vague, and he was not legally required to guess the nature and scope of the requests in order to determine if particular documents existed.
The right of the public to access public records is a fundamental right guaranteed by both the Louisiana Constitution and the Public Records Law. Muhammad v. Office of Dist. Attorney for Par. of St. James , 16-9 (La. App. 5 Cir. 4/27/16), 191 So.3d 1149, 1156. According to La. R.S. 44:31,
A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
*985 (3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
The constitutional right of the public to access public records must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law specifically and unequivocally provides otherwise. Louisiana Capital Assistance Ctr. v. Dinvaut , 16-383 (La. App. 5 Cir. 12/7/16), 207 So.3d 1187, 1194, citing Muhammad , 191 So.3d at 1156-57. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right of access. Id. Nevertheless, the burden of proving that a public record is not subject to inspection, copying, or reproduction remains with the custodian. La. R.S. 44:31(B)(2) ; Muhammad , supra .
At trial, Sheriff Champagne testified during TCCR's case-in-chief. He explained that his two trips to North Dakota in October 2016 were on behalf of the National Sheriff's Association, and the Sheriff's Office did not pay for his expenses on those trips. He further explained that the deployments of the employees of the Sheriff's Office to North Dakota in relation to the "Standing Rock" protests was in response to an EMAC request from the North Dakota, and the deployments were not expenses of the St. Charles Parish taxpayers. However, he later explained that expenses are reimbursed in connection with assisting the requesting state, and reimbursements occurred for the deployments in question. When questioned about receipt of TCCR's public records request, Sheriff Champagne testified that the requests were handled by Captain Bostick, as Captain Bostick was delegated the tasks of gathering the information and responding to the requests.
Captain Bostick also testified for during TCCR's case-in-chief. He stated that he was the in-house counsel and the Director of Business and Legal Affairs for the Sheriff's Office. When questioned whether documentation supporting the EMAC data, e.g. , receipts or invoices, sent to TCCR existed, Captain Bostick responded, "I'm sure there are receipts that back up any entry in the entire EMAC file for audit purposes." However, he did not consider the receipts to be responsive to the request because the EMAC file was produced.
As previously mentioned, TCCR requested copies of any and all public records relating to any travel by the employees of the Sheriff's Office to North Dakota in October 2016 in response to the protests against the Dakota Access Pipeline Project. According to La. R.S. 44:1(2)(a),
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers...regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function, which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state...or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.
If any public record applied for by any authorized person is not in the custody or *986 control of the person to whom the application is made, such person shall promptly certify this in writing to the applicant. La. R.S. 44:34. The certification shall state in detail, to the best of the custodian's knowledge and belief, the reason for the absence of the record from his custody or control, its location, what person then has custody of the record and the manner and method, and the exact time at which his custody or control was taken. Id. He shall include in the certificate ample and detailed answers to inquiries of the applicant which may facilitate the exercise of the right granted by that provision. Id.
Here, Captain Bostick testified there "probably" were receipts that were not produced to TCCR in response to its request. Receipts for the travel by the employees of the Sheriff's Office to North Dakota in October 2016 in response to the protests against the Dakota Access Pipeline Project fall within the definition of public records. Additionally, whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right of access. Louisiana Capital Assistance Ctr. , supra . As such, the doubt of whether TCCR should have access to the receipts in question that are in the possession of Sheriff Champagne must be resolved in favor of TCCR's right of access. Furthermore, if Sheriff Champagne was not authorized to produce the receipts, he did not comply with La. R.S. 44:34 because he failed to certify the reason for the absence of the receipts from the record.
Therefore, we find that the trial court's conclusion that Sheriff Champagne complied with the public records request in this matter was manifestly erroneous. The testimony presented at trial proved by a preponderance of the evidence that Sheriff Champagne possessed public records that were not produced pursuant to TCCR's request. Accordingly, we find that TCCR is entitled to any and all receipts for the travel by the employees of the Sheriff's Office to North Dakota in October 2016 in response to the protests against the Dakota Access Pipeline Project that are in the possession of Sheriff Champagne.
Additional Search
TCCR alleges the trial court erred in dismissing the action without requiring Sheriff Champagne to conduct a further search for responsive records relating to the trip to North Dakota by the personnel of the Sheriff's Office, in light of the evidence that additional records existed at one point in time. It argues that Sheriff Champagne acted arbitrarily and capriciously and conducted an inadequate and incomplete search without a reasonable basis. TCCR specifically argues that the existence of videos related to the employee's travel to North Dakota was confirmed through testimony, and the trial court should have ordered Sheriff Champagne to confirm whether the records still exist.
Sheriff Champagne argues that he did not act arbitrary or capriciously in responding to the request for public records. He maintains that no public records of the Sheriff's Office were withheld and all responsive documents that were located were produced to TCCR. He avers the trial court does not have the authority to order him to conduct a further search for documents that where not specifically requested.
At trial, Captain Yoes, the Commander of the Special Services Division, testified that he was sent to North Dakota and brought cameras from the Sheriff's Office with him. He stated that he was deputized as a deputy for the Martin County Sheriff's *987 Office[3] , and he used a number of cameras while there. Once he finished his work, the files from the devices were loaded on a hard drive, and he provided all of the files relating to the EMAC to the county's sheriff and the public information officer. Captain Yoes testified that there may be some electronic files that still exist; however, to his knowledge, no one has searched those cameras for records.
La. R.S. 44:1(2)(a) provides that photographs, tapes, and recordings, regardless of the physical form or characteristics, are considered public records, when used by a public body to conduct any authorized business, transaction, work, duty, or function. Pursuant to La. R.S. 44:36(C), the electronic files on those cameras should have been preserved for, at least, three years from the date on which the pictures were taken. If they exist, the files on the Sheriff's Office's cameras referred to by Captain Yoes fall within the definition of public records, and those files should have been produced to TCCR.
Therefore, we again find that the trial court's conclusion that Sheriff Champagne complied with the public records request in this matter was manifestly erroneous. The testimony presented at trial proved by a preponderance of the evidence that Sheriff Champagne possessed public records, i.e. , the electronic files stored on the Sheriff's Office's cameras, which were not produced pursuant to TCCR's request. Accordingly, we find that TCCR is entitled to the electronic files stored on the Sheriff's Office's cameras that were taken by the employees while on duty in North Dakota in 2016, if they still exist. We further find, after consideration of the efforts put forth to satisfy the request, that Sheriff Champagne was not arbitrary and capricious in his response to TCCR's public records request.
DECREE
For the foregoing reasons, we reverse the trial court's judgment that granted Sheriff Champagne's oral motion for involuntary dismissal and dismissed TCCR's petition for writ of mandamus. We render judgment in favor of TCCR, enjoin Sheriff Champagne from withholding public records, and grant mandamus relief by ordering Sheriff Champagne to produce the receipts for the travel by the employees of the Sheriff's Office to North Dakota in October 2016 in response to the protests against the Dakota Access Pipeline Project and the electronic files stored on the Sheriff's Office's cameras that are in his possession, in compliance with the Louisiana Public Records Law. In the event that Sheriff Champagne is unable to produce the ordered records, he is directed to comply with La. R.S. 44:34. We decline to render any awards to TCCR pursuant to La. R.S. 44:35(D)(1) or (E)(1).
REVERSED; JUDGMENT RENDERED

TCCR later amended its petition on December 18, 2017.

Assignment of error number one is interrelated to assignments two and three. Thus, the first assignment will be addressed within assignments of error two and three.

In his brief to this Court, Sheriff Champagne represents that the county's name is "Morton."