REBACCA L. HAGOOD

VERSUS

JAMES DAVID SINNOTT, JR.

NO. 23-CA-168

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 89,767, DIVISION "C"
HONORABLE CONNIE M. AUCOIN, JUDGE PRESIDING

November 29, 2023

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
John J. Molaison, Jr., and Scott U. Schlegel

**AFFIRMED**
 **JJM**
 **SJW**
 **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
REBACCA L. HAGOOD
    Mark A. Marino

COUNSEL FOR DEFENDANT/APPELLEE,
JAMES DAVID SINNOTT, JR.
    Kim N. Nguyen
    Gordon J. Kuehl
    Ellen C. Thomas

**MOLAISON, J.**

In this appeal pertaining to the issuance of a protective order, the appellant seeks review of the trial court's ruling which granted the appellee's motion for involuntary dismissal. For the reasons that follow, we affirm.

*Procedural history*

On November 2, 2021, the appellant, Rebacca Hagood filed a Petition For Protection From Abuse at the 29th Judicial District Court for the Parish of St. Charles on behalf of herself and her minor child, GES.[1] In her pleading, Ms. Hagood alleged that the appellee, James Sinnott, Jr., had committed various acts which merited protected status for her and GES, including: threatening bodily harm, general abuse, threatening to commit suicide, and driving while intoxicated with GES in the car. The petition also alleged that Mr. Sinnott had sexually abused GES on October 20, 2021. A temporary protective order was initially granted on November 3, 2021, and extended upon the motion of Ms. Hagood through the date of trial on the matter, which was held on October 18-19, 2022. On the second day of trial, after Ms. Hagood had rested her case, Mr. Sinnott moved the court for an involuntary dismissal, which the trial judge granted. This timely appeal follows.

**Assignment of error one**

The evidence presented during the protective order hearing was sufficient to establish that an order should have been granted by the court.

**Law and analysis**

To obtain a protective order under the Domestic Abuse Assistance Act, the petitioner must prove the allegations of domestic abuse by a preponderance of the evidence. La. R.S. 46:2135(B); *Ferrand v. Ferrand*, 16-7 (La. App. 5 Cir.

---

[1] This opinion will use the initials of the minor child, rather than the full name, to protect and maintain the privacy of the minor child involved in this proceeding. *Burds v. Skidmore*, 19-0263 (La. App. 4 Cir. 3/22/19), 267 So.3d 192, 193; *D.M.S. v. I.D.S.*, 14-0364 (La. App. 4 Cir. 3/4/15), 225 So.3d 1127, 1130.

8/31/16), 221 So.3d 909, 943, *writ denied*, 16-1903 (La. 12/16/16), 211 So.3d 1164. A trial court is afforded discretion in the issuance of a protective order and the trial court's order is reversible only upon a showing of an abuse of discretion. *Ruiz v. Ruiz*, 05-175 (La. App. 5 Cir. 7/26/05), 910 So.2d 443, 445.

In this matter, the trial court decided the merits of the protection order by way of an involuntary dismissal. La. C.C.P. art. 1672 provides, in part:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

During a bench trial, after the plaintiff has completed the presentation of his evidence, the appropriate standard in determining whether an involuntary dismissal should be granted is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence. *Christiano v. S. Scrap Recycling*, 13-595 (La. App. 5 Cir. 12/27/13), 131 So.3d 1059, 1063. Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that a fact sought to be proved is more probable than not. *Graff v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 09-598 (La. App. 5 Cir. 03/23/10), 39 So.3d 685, 689, *writ denied*, 10-0907 (La. 06/18/10), 38 So.3d 331. The trial court is not required to review the evidence presented in the light most favorable to the plaintiff. *Christiano, supra*.

The trial court has much discretion in determining whether to grant a motion for the involuntary dismissal of an action. *Id*. An appellate court may not reverse a ruling on a motion for involuntary dismissal unless it is manifestly erroneous or clearly wrong. *Id*. On appeal, the issue to be resolved is not whether the trier of fact

was right or wrong, but whether the factfinder's conclusion was a reasonable one.

*Id.*

On appeal, Ms. Hagood centers her argument solely upon the allegation that GES was sexually abused by Mr. Sinnott.[2]

In her petition for a protective order, Ms. Hagood provided the following information about the alleged sexual abuse, which was indicated to have occurred on October 20, 2021:

> Minor Child GES made confession to Petitioner that Adopted Father James David Sinnott, Jr. forced GES to have oral sex with him and disrobe while walking in Sinnott's home. Mother brought minor child to pediatrician on 10/25/21, who recommended Petitioner call social worker and police. GES made additional confession to Jefferson Parish Police Department on 10/27/21 that Sinnott sexually assaulted him. On 10/28/21 GES was brought to Children's Hospital to Emergency Room. GES confessed again that father had assaulted him, prompting STD testing. Dr. Jenee Bridges noted that "In the ED, [GES] did disclose the abuse and deflected the conversation to mom to talk about details." See Exhibit No. 1, GES Medical Records.

Ms. Hagood's testimony at trial regarding the allegations of sexual abuse varied from the allegations as stated in her petition. At trial, she testified that on October 20, 2021, GES only told her that he was scared of Mr. Sinnott, because he thought Mr. Sinnott would hit him in the back of the head. Ms. Hagood asserted that the date of disclosure on the petition was wrong, and that on October 20, 2021, GES had only disclosed "concerns," that days later were clarified to be sexual abuse.

The record reflects that when Ms. Hagood brought GES to see Dr. Adams on October 25, 2021, Dr. Adams did not, as alleged in the petition, instruct Ms. Hagood to contact police and a social worker at that time. GES did not disclose any sexual abuse to Dr. Adams. A progress note contained in a report from Dr.

---

[2] The analysis that follows is not a determination of whether Ms. Hagood had a valid subjective basis to pursue what she perceived to be incidents of sexual abuse. Rather, it is a strict review of the objective evidence presented at trial to support her claim.

Adams related to the October 25, 2021 exam of GES was introduced into evidence, and stated in relevant parts:

> [GES] was brought in today by his mother. He disclosed to mom last Wednesday of an incident involving his adoptive father while he was in the shower when at the beach, he would not go into detail with me. Also mom is concerned because she[sic] told her that there [sic] dad also hits him at times when he is drinking. [GES] stated to his mom that he was scared to be at his dad's house. At today's visit [GES] would not disclose anything to me. I have therefore referred this matter to the forensic psychologist in pediatricians at Children's hospital for appropriate questioning and physical exam. Mom is concerned because their father has been abusive to her in the past as well. [GES] was reluctant to talk and visibly upset. He also demonstrated anger towards his mom for telling me what he had told her.
> . . .
> No outward signs of abuse, however I deferred a full physical exam in full questioning to the forensic psychologist and physician who are trained in determining if abuse has taken place. He was visibly upset and angry during the office visit. He did not want to say anything negative against his father.

When asked about the "beach incident" at trial, Ms. Hagood testified that she was present for the incident at the beach where Mr. Sinnott had pulled back a shower curtain and gave GES a "high five," but Ms. Hagood was not alarmed by what she saw at that time and did not consider the episode to be sexual abuse.

Ms. Hagood next testified that GES disclosed sexual abuse to her in an audio recording she had made while GES was in the bathtub. At trial, she did not recall the contents of the recording and could not say what GES had told her about the alleged abuse. Ms. Hagood recounted that GES told her that Mr. Sinnott got intoxicated while playing a video game and told the other players to "suck it." She claimed that, later that same night, Mr. Sinnott told GES to "suck it." She testified that GES told her that he understood "it" to mean "penis." Ms. Hagood admitted that GES did not say in the recording that Mr. Sinnott forced GES to perform oral sex on him.

The audio recording itself was introduced into evidence. In it, Ms. Hagood can be heard asking GES a question, without any prior context, about an unspecified event. GES can be heard saying that he did not know and could not remember. Ms. Hagood asks him, "Does he only make you suck his penis, or does he do other things?" GES did not directly confirm Ms. Hagood's statement. Instead, he responded that Mr. Sinnott would make GES "run around the house" when he was intoxicated, but GES could not explain why. When Ms. Hagood asked additional questions, GES said that Mr. Sinnott had asked GES not to tell Ms. Hagood when he bought GES gifts. GES did not say that Mr. Sinnott told him not to reveal sexual abuse to anyone.

Ms. Hagood brought GES to speak to detectives from the Jefferson Parish Sheriff's Office on October 27, 2021. The following day, she brought GES to interview with Dr. Wetsman at Children's Hospital Care Center. GES did not make a disclosure of sexual abuse on that date. A recording of the forensic interview and partial transcript from the forensic interview of GES by Dr. Wetsman at the Children's Hospital Care Center on October 28, 2021 was entered into evidence. In the recording, GES said he loved going to Mr. Sinnott's house. GES denied that anyone had ever hurt him, and he said that the only persons who had touched him inappropriately were "doctors." GES stated that the only person who made him do something he did not want to do was him mom, when she required him to do chores around the house. When asked if he was worried about anything, GES replied that he was concerned about getting injured at football practice.

Dr. Wetsman was called as a witness by Ms. Hagood at trial, and was accepted as an expert in pediatric medicine in the diagnosis of child sexual abuse. Dr. Wetsman testified that the past history recorded in her notes was based solely on what Ms. Hagood had told her about the alleged sexual abuse. On cross

examination, Dr. Wetsman clarified that she did not conduct a forensic examination of GES. Dr. Wetsman also stated her opinion that she believed Ms. Hagood had asked GES a leading question about the alleged sexual abuse on the tape recording of GES in the bath tub.

On October 28, 2021, Ms. Hagood brought GES to another examination at Children's Hospital emergency room with Dr. Bridges. Ms. Hagood testified that GES disclosed sexual abuse to Dr. Bridges at that time. However, in a report generated by the Children's Hospital Emergency Department on October 28, 2021, Dr. Bridges wrote, in relevant part:

> In the ED, the patient disclosed that he was here because "I was being abused by my dad." He asked that mom give the details. Mom reports that "when drinking, dad would make Graham suck his penis and then run around the house. He would later buy Graham gifts and tell him not to tell." "Graham interjected, no, he didn't say that-I meant, he said, "I'm sorry."

On October 29, 2021, Ms. Hagood brought GES to Jefferson Parish Child Advocacy Center for a forensic interview. Ms. Hagood testified that after the interview, GES told her that he had reported that Mr. Sinnott had forced him to perform oral sex four times in one night. No part of that interview was introduced into evidence.

Another interview with a detective was scheduled for November 2, 2021, the same date the petition for protection was filed. Ms. Hagood informed the court that all charges against Mr. Sinnott had been refused. However, she told investigators at the time that Mr. Sinnott had sexually abused GES. No evidence regarding the Jefferson Parish Sheriff's Office investigation was offered into evidence.

Ms. Hagood also called Dr. Shanel Chandra to testify as an expert in the field of child and adolescent psychiatry and treating victims of sexual assault. Dr. Chandra testified that she treated GES virtually via telemedicine, beginning in

December of 2021. She met with Ms. Hagood first, and it was she who gave Dr. Chandra the information about the alleged sexual abuse, and indicated that there was an ongoing investigation. Dr. Chandra could not draw any conclusion about whether the abuse did, or did not occur, and GES did not disclose any sexual abuse during his sessions, but told her that he missed his father. She diagnosed GES with an anxiety disorder.

GES was not called by Ms. Hagood as a witness at trial.

As noted above, Ms. Hagood's burden at trial was to establish her claim by a preponderance of the evidence. What the evidence introduced at trial established, when viewed in its entirety, is that the specific allegation that Mr. Sinnott forced GES to perform oral sex on him was only ever recounted directly by Ms. Hagood herself, and was never confirmed by GES in any of the interviews and examinations that occurred between October 25, 2021 and November 2, 2021. There was no evidence presented of an independent finding, by law enforcement or the medical examiners, that the alleged sexual abuse had taken place. Based on the evidence introduced at trial, and using the relevant standards of review cited above, we find no abuse of discretion in the trial court's decision denying Ms. Hagood's motion for a protective order on behalf of GES by way of an involuntary dismissal.

**Assignment of error two**

In her second assignment of error, Ms. Hagood contends that the trial court improperly granted an involuntary dismissal without considering the motion to allow the child, GES, to testify and disposing of the motion prior to its ruling on the involuntary dismissal.

**Law and analysis**

There is a lack of jurisprudence on the issue of whether a child must testify in a hearing under the Domestic Abuse Assistance Act. Neither the Act, nor cases arising from the Act, specify that a victim must testify at a hearing on a protective

order. To the contrary, the Act only specifies that a protective order be issued when "[r]easonable notice and opportunity to be heard is given to the person against whom the order is sought sufficient to protect that person's right to due process." *S.L.B. v. C.E.B.*, 17-0978 (La. App. 4 Cir. 7/27/18), 252 So. 3d 950, 963, *writ denied*, 18-1442 (La. 11/20/18), 256 So.3d 992.

The record in this matter reflects that Ms. Hagood considered the possibility of calling GES at trial. That intent is evidenced by her Motion For *Watermeier*[3] Hearing, which was filed on August 29, 2022. In a letter filed by Ms. Hagood's counsel on August 29, 2022, it is acknowledged that such a hearing is discretionary with the trial court, but nonetheless concludes, "The minor child [GES] will not be brought to the courthouse until this Honorable Court decides the *Watermeier* motion."

There is nothing in the record to indicate that either party subpoenaed GES to testify on the dates of trial. The record shows that, on the eve of trial, the court inquired about the status of pending matters. Counsel for Ms. Hagood did not re-urge the issue of the *Watermeier* hearing prior to the beginning of trial and did not object to the trial proceeding without a ruling on the *Watermeier* motion. Ms. Hagood rested case her case without calling GES as a witness. Under similar circumstances, other courts have found a *Watermeier* issue to be waived for the purposes of appeal. *S.L.B. v. C.E.B.*, 17-0978 (La. App. 4 Cir. 7/27/18), 252 So.3d 950, 963, *writ denied*, 18-1442 (La. 11/20/18), 256 So.3d 992. Here, under the facts presented, we find that Ms. Hagood did not preserve this issue for our review.

---

[3] "A 'Watermeier hearing' is a hearing in chambers, outside the presence of the parents, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody." *In re D.C.M.*, 13-0085 (La. App. 1 Cir. 6/11/13), 170 So.3d 165, 168, *writ denied*, 13-1669 (La. 7/17/13), 118 So.3d 1102. La. R.S. 13:3665. The law fixes no precise age when the witness shall be excluded, and determining the competency of the witness is within the sound discretion of the trial judge. *Watermeier v. Watermeier*, 462 So.2d 1272 (La. Ct. App. 5th Cir. 1985).

## Conclusion

For the reasons assigned, we find no abuse of discretion in the trial court judgment denying Ms. Hagood's petition for a protective order. We further find that the *Watermeier* issue was not preserved for this Court's review. Accordingly, the judgment of the trial court is affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 29, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-CA-168

### E-NOTIFIED
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE CONNIE M. AUCOIN (DISTRICT JUDGE)
MARK A. MARINO (APPELLANT)          GORDON J. KUEHL (APPELLEE)          KIM N. NGUYEN (APPELLEE)

### MAILED
ELLEN C. THOMAS (APPELLEE)
ATTORNEY AT LAW
643 MAGAZINE STREET
SUITE 401
NEW ORLEANS, LA 70130