hKOSTELKA, J.
G. Hemavathy (“Hema”) appeals the judgment of the Twenty-Sixth Judicial District Court denying her Petition to Annul Judgment, wherein she prayed for the annulment of the judgment of separation rendered in favor of Tumkur S. Shivashan-.kara (“Shiva”) in 1982.[1] Finding no manifest error in the trial court’s judgment, we affirm.
Facts
Shiva and Hema were married in 1966 in India. In 1979, they established their matrimonial domicile in Bossier City, Louisiana, where they resided together as man and wife until approximately June 3, 1981, when Hema returned to India, leaving the couple’s three sons in Louisiana with Shiva. It is disputed by the parties whether Shiva forced Hema to go to India or whether she went voluntarily. In July, 1981, Shiva traveled to India with the younger two sons leaving them with Hema, because he could no longer care for them alone. After a brief stay in India, Shiva returned to Louisiana.
On November 4, 1981, Shiva filed a Petition for Separation in the Twenty Sixth Judicial District Court against Hema on the ground of abandonment (the “Separation Proceedings”). A curator ad hoc, Ford E. Stinson, Jr. (“Stinson”), was appointed to represent the absent Hema, and service of process was made on Stinson on November 12, 1981. The curator mailed notice of the Separation Proceedings to Hema at the address supplied by Shiva, which was Hema’s mother’s address in India. On January 28, 1982, Shiva was granted a judgment of separation based upon abandonment (the “Separation Judgment”). The notice which the curator had previously mailed was subsequently returned to the curator unclaimed, and it was filed into the record of the proceedings.
|gOn June 7, 1982, Shiva filed a Petition for Divorce claiming the parties had been separated for a period of time in excess of one year. Service of this petition was again made on Hema through Stinson, who had again been appointed curator ad hoc. However, when notice of these proceedings were mailed to Hema at the same address, it was received, and Hema made contact with Stinson prior to the hearing. Hema appeared and testified at the trial held in connection with Shiva’s Petition for Divorce on December 3, 1982. A judgment on the petition was rendered granting divorce as prayed for by Shiva.
Subsequent to the judgment of divorce being rendered, numerous incidental proceedings took place in the matter between the years 1983 and 1988, concerning issues of the community property regime, custody and child support. Then on October 16, 1990, Hema filed the Petition to Annul Judgment in the trial court, praying for the annulment of the Separation Judgment, claiming she had never been properly cited and served with process in the separation proceeding.
In response, Shiva filed several exceptions, one of which was denied, with the *118 others being deferred to the trial on the merits, which was not held until September 17, 1999. After the trial, the trial court ruled in favor of Shiva dismissing the claims of Hema. This appeal ensued.
Discussion

Absenteeism and Service of Process on the Curator Ad Hoc

In her first and third assignments of error, Hema disputes, respectively, the finding by the trial court that she was properly declared an absentee in the Separation Proceedings, and, therefore, that the resulting appointment of a curator ad hoc to accept service on her behalf was improper. The trial court determined that the earlier ruling in the Separation Proceedings was correct, Hema was indeed an absentee as that term is used in La. C.C.P. arts. 5091 and 5251(1), and the appointment of a curator ad hoc to represent her in the separation proceedings was, | .¡therefore, proper. We conclude that the trial court was not manifestly erroneous for the following reasons.
Initially, we note that the burden is on the plaintiff in the nullity action, here Hema, to prove that she was not an absentee, that she was available to be served, or that a diligent search, which would have resulted in the ascertainment of her whereabouts, was not made. Burkett v. Property of Douglas, 575 So.2d 888, 891 (La.App. 2d Cir.1991), citing, Peschier v. Peschier, 419 So.2d 928 (La.1982); Moore v. Moore, 340 So.2d 404 (La.App. 2d Cir. 1976).
Additionally, in the event that Hema met her burden and proved herself not to have been an absentee in 1981, such a finding would have the effect of making the Separation Judgment a nullity, which is Hema’s ultimate goal in this litigation. Thus, it is appropriate to consider that the burden of proof for annulling a judgment of separation may even be greater than that for disclaiming Hema’s status as an absentee. In Peschier, supra at 926, the supreme court stated:
There is a strong public policy against disturbing or declaring invalid a judgment of divorce, especially after a long period of time where the marital status of innocent parties who relied on the validity of that judgment would be disturbed, and more particularly where a decree would render innocent parties guilty of bigamy. Wilson v. Calvin, 221 La. 451, 59 So.2d 451 (1952); Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (1949); Rouse v. Rouse, 219 La. 1065, 55 So.2d 246 (1951). Because of this strong public policy and a presumption as to the regularity of the judicial proceedings, plaintiff must prove by clear and convincing evidence the grounds for annulment of the ... divorce judgment. Wilson v. Calvin, supra; Logwood v. Logwood, 85 La. 1, 168 So. 310 (1936).
Clearly, Hema did not meet such a heightened burden of proof.
Hema argues that she was not an absentee as defined in La. C.C.P. art. 5251(1), which states as follows:
“Absentee” means a person who is either a nonresident of this state, or a person who is domiciled in but has departed from this state, and who has not appointed an agent for the service of process in this state in the manner directed by law; or a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state; or a Lperson who may be dead, though the fact of his death is not known, and if dead his heirs are unknown.
Clearly the article sets forth four different categories for determining whether an in *119 dividual is an absentee: (1) non-residents of Louisiana; (2) persons domiciled in Louisiana, but who have departed from this state and have not appointed an agent for service of process; (3) persons whose whereabouts are unknown, or who cannot be found and served after a diligent effort, even though that person may be domiciled or actually present in the state; or (4) a person who may be dead.
In the instant case, it appears that in 1981 Hema fell under the second category of persons and was correctly determined to be an absentee by the trial court. She was a Louisiana domiciliary who had departed Louisiana for her native India, and she admittedly did not appoint an agent for service of process in Louisiana. Hema argues, however, that her “departure” from the state was only temporary, and that in order to be properly considered an absentee, her absence must have been permanent. In support of her argument, she cites two cases, Spence v. Spence, 158 La. 961, 105 So. 28 (1925) and Peschier, supra, which we find to be unpersuasive as applied to the facts in this particular case.
In Spence, supra, the trial court determined that absenteeism requires more than a temporary absence from the state. In that case to annul a divorce judgment, the trial court made the factual finding that the wife had not departed the state permanently, but only temporarily for a two month vacation, a fact of which the husband was fully aware, although he had specifically represented to the court that his wife had -left the state permanently. Id., 105 So. at 29. The trial court determined that the husband had made false and fraudulent statements regarding the wife’s status as an absentee, and the divorce judgment was set aside. Id.
Peschier, supra, follows Spence, supra, but addresses the scenario of a wife whose whereabouts were allegedly unknown to the husband. In Peschier, the |5husband represented to the trial court that his wife was living in Texas, when there was abundant evidence at trial that he actually knew (or could have very easily ascertained) that his wife was indeed living in Louisiana. Id. at 927. It was also determined that the wife proved “by exceptionally strong and convincing proof’ that she was not an absentee. Id. Thus, in Pes-chier, the divorce judgment was found to be void. Id.
In this case, however, Hema did not meet her burden of proof, as she did not present at trial sufficient evidence that her trip to India was temporary, although she testified that she always intended to come back to Louisiana, and that she had written Shiva conveying her intention of returning in mid-July. However, other than her testimony, she had no evidence of any correspondence in that vein, and there was no evidence that she had ever indicated to Shiva when she intended to return to Louisiana. In fact, considering the evidence presented by both parties, there was no certainty how temporary, or how permanent for that matter, her absence from Louisiana was intended to be. Hema did put forth evidence that she left behind not only her three children (two of whom were soon brought to her in India), but some clothes, jewelry and her Hindu “god,” which she urges indicates the temporary nature of her trip. But, there was also testimony by both parties that the marriage was deeply troubled, which could indicate that Hema herself was unsure as to the length of time she intended to be gone when she left in June of 1981. Shiva testified that initially when Hema had left for India, he had hoped that their tur-moiled marriage might be saved by Hema’s visit with her mother. However, he further testified that when he brought *120 their two youngest children to India the month following her departure, the visit between the two was unpleasant.
Finally (and perhaps the most compelling evidence regarding Hema’s intent and Shiva’s belief in regards to her absence in 1981), Shiva produced a copy of a letter sent to Hema at her mother’s home in India on September 23, 1981, in which |fihe tells her to come home or he will institute a “divorce action” against her. This letter was sent certified mail, return receipt requested, and the return receipt was signed by Hema, indicating that she received the letter on October 12, 1981, although she denies ever seeing it.[2] Hema offered no evidence that the signature on the return receipt was not hers, nor an explanation as to why the return receipt would indicate she received Shiva’s letter when she claimed never to have seen it. There was no evidence of a response by Hema to the letter. It was reasonable for Shiva to believe that the lack of response by Hema indicated she would not return, thus making her stay in India appear to be more permanent than not.
The record further reflects that on November 4, 1981, after hearing no response from Hema to his September 23, 1981 letter, Shiva instituted the Separation Proceedings against her, alleging that Hema had “left the State of Louisiana.” As the record reflects, Stinson was then appointed to represent the absent Hema, and the Separation Proceedings commenced, culminating in the Separation Judgment.[3]
Clearly, the trial court weighed the testimony of the parties presented at trial. Whereas the determination of whether Hema was an absentee is a legal determination, such a conclusion hinges on the factual determination of whether 17Hema’s departure was temporary or permanent, on which issue both Hema and Shiva testified at trial. We note that:
It is well settled that the district court’s finding of fact may not be set aside on appeal in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact finder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *121 Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not substitute its opinion for the conclusions made by the district court, which is in a unique position to see and hear the witnesses as they testify. In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206.
Leal v. Dubois, 00-1285 (La.11/17/00), 774 So.2d 155.
The trial court obviously considered the uncontroverted evidence that Shiva’s and Hema’s marriage was seriously troubled at the time that Hema left in early June, 1981 for her mother’s home in India, as noted in its written reasons for judgment. Further, although Shiva indicated that he had hoped his marriage could be saved as a result of Hema’s return to India, clearly, by September, 1981, any desire or hope he had to save his marriage was practically gone as evidenced by his letter to Hema. By the time Shiva instituted the Separation Proceedings, Hema had been absent from Louisiana for five months. The evidence presented at trial gave no conclusive indication as to when she would return. She offered little evidence, and certainly not clear and convincing evidence, as to when she intended to return to Louisiana or whether she had indicated such to Shiva. Whereas in Spence, supra, and Peschier, supra, where the evidence overwhelmingly favored the attack on the respective judgments, the evidence in this case does not bear out a conclusion that anyone knew with any certainty when Hema intended to return.
| «Additionally, Hema argues that she could not return to Louisiana due to the serious injury of their son; however, the accident did not occur at such a time which would have impeded her return before or during the Separation Proceedings, as the accident occurred after the Separation Judgment was rendered.
Therefore, because Hema failed to carry her requisite burden of proof as to disclaiming her absentee status, we conclude that the trial court was not manifestly erroneous in its finding that Hema was legally an absentee in November, 1981 when Shiva commenced the Separation Proceedings. As a result, the appointment of a curator ad hoc to represent her in the Separation Proceedings was not error.
In her second assignment of error, Hema argues that the trial court erred in finding that Shiva had no duty to attempt to locate Hema before having a curator ad hoc appointed to represent her. Hema argues that Louisiana jurisprudence and the codal definition of “absentee” require a showing that the whereabouts of the defendant were unknown to the opposing party and could not have been discovered after a diligent search. Hema’s argument and her reliance on Security Homestead Ass’n v. Fuselier, 591 So.2d 335 (La.1991) to support her argument is misplaced. The language in Security Homestead, supra cited by Hema purportedly supporting her argument is limited, and when it is read in context, it only serves to explain the use of the third category stated in La. C.C.P. art. 5251 (i.e., persons whose whereabouts are unknown, or who cannot be found and served after a diligent effort, even though that person may be domiciled or actually present in the state) to determine whether a person is an absentee.
Furthermore, even if Hema’s whereabouts were an issue to be considered, the evidence indicates that her whereabouts were not unknown to Shiva, who knew for *122 a fact that she was not in Louisiana but in India, thus making this category under La. C.C.P. art. 5251(1) inapplicable in determining whether Hema was an absentee. Additionally, we conclude that Shiva had a reasonable belief that Hema |9was staying with her mother in India, which precluded him from any duty that Hema argues Shiva had for making a diligent search for her whereabouts.
In its Written Reasons for Ruling Regarding Judgment of Separation, the trial court stated that, “Taken as a whole, the evidence convinces the Court that the address provided to the curator ([Hema’s] mother’s address) was the best address available and that more likely than not [Hema] should have received any information that was properly sent to that address.” We agree with that assessment of the evidence by the trial court.
Both parties testified at trial that the address of Hema’s mother in India was the address the parties used as their permanent address in India. Specifically, it was the address listed as Hema’s Indian address on her passport. Further, both parties testified that Hema had departed Louisiana with the understanding that she was going to India to stay with her mother. Additionally, when Shiva came to India in July with the couple’s two younger children, Hema was still living at her mother’s home. However, the most compelling evidence that the trial court had before it regarding Shiva’s knowledge of Hema’s whereabouts in India is the return receipt he received from the postal service, signed by Hema, acknowledging her receipt of his September 23rd letter sent to her mother’s address in India. He received the return receipt a little more than a month before he started the Separation Proceedings.
Clearly, Shiva had a good faith and reasonable belief that his wife could be reached at her mother’s address in India when he filed suit in the Separation Proceedings. We conclude that the trial court did not err on this issue, and that this assignment of error is without merit.
Hema finally raises a fourth assignment of error, arguing that the trial court erred in its finding that the Separation Judgment was valid and was not an absolute nullity pursuant to La. C.C.P. art. 2002(A)(2). However, considering our [ mforegoing discussion and conclusion that the trial court did not err on the issues of Hema’s status as an absentee and the resulting appointment of a curator ad hoc, we conclude that the Separation Judgment is valid.

Acquiescence

Alternatively, and assuming ar-guendo that Hema was improperly determined to be an absentee and that, resul-tantly, service of process on the curator ad hoc was, therefore, invalid, we believe that Hema acquiesced in the Separation Judgment and is precluded from attacking its validity.
Hema argues that the Separation Judgment should be annulled pursuant to La. C.C.P. art. 2002, which states, in pertinent part, as follows:
A. A final judgment shall be annulled if it is rendered:
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
However, such an attack pursuant to art. 2002, is limited pursuant to La. C.C.P. art. 2003, which states as follows:
A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment *123 on any of the grounds enumerated in Article 2002.
We acknowledge that Hema’s actions soon after the Separation Judgment was rendered would indicate that initially Hema may not have totally acquiesced in the Separation Judgment. Although she never previously filed any pleading attacking the validity of the Separation Judgment, she did verbally voice her objection to the separation during the trial of the divorce proceedings. On March 3, 1983 she filed her Petition for Custody, Child Support and Alimony, wherein she admits the existence of the Separation Judgment, but claims that she had no knowledge of the Separation Proceedings until after the Separation Judgment was rendered.
_LuNonetheless, the pleadings filed by Hema following the finality of the couple’s divorce, indicates ultimately her voluntary acquiescence in the Separation Judgment. We note that in that same March 3rd pleading, Hema claimed a one-half interest to the community property belonging to the couple, which community property regime was terminated retroactive to the date of filing of the Separation Proceedings upon the finality of the Separation Judgment. Her allegation specifically acknowledges that her claim arose as of November 4, 1981 — the date Shiva commenced the Separation Proceedings. Obviously, this claim for relief would indicate that Hema is availing herself of the Separation Judgment, which gave her the right to make such a demand upon the dissolution of the community property regime. On the same date, Hema filed a Petition for Partition of Community Property, wherein she notices the Separation Judgment and acknowledges its effect on the community property regime, seeking the partition of all community property affected by the judgment. Again, she availed herself of the Separation Judgment. Then, on or about June 6, 1984, Hema filed her Petition for Rule to Show Cause to Increase Child Support and for Additional Relief, which “additional relief’ included a claim for an accounting of all property that had previously belonged to the community, but which had become jointly owned as an ultimate result of the Separation Judgment. Again, she specifically acknowledges November 4, 1981 as the date upon which the community property regime terminated. Finally, in the years following the divorce, Hema filed various proceedings relating to the custody and support of the couple’s children, which we believe further evidence her acquiescence in the Separation Judgment. See, Bergman v. Bergman, 425 So.2d 831, 833 (La.App. 5th Cir.1982) (a wife’s attack of five-year-old divorce judgment was null, because she had acquiesced in the judgment when she asserted its validity in a Pennsylvania court, and recognized her status as a tenant in common with her previous husband).
| ^Resultantly, we conclude that even if Hema intended to attack the validity of the Separation Judgment for a vice of form pursuant to La. C.C.P. art. 2002(A)(2), such a claim is precluded by her subsequent voluntary acquiescence in the judgment.
Finally, Shiva argues that Hema’s claim is barred by the one year prescriptive period set forth in La. C.C.P. art. 2004, because her claim is better characterized as an action for annulment based on a vice of substance (i.e., the misrepresentation by Shiva of her absence). We note that the one-year period is peremptory and dates from the discovery of the alleged fraud or ill practice. Here, Hema was aware of the Separation Judgment, at least by 1982. However, based on our findings as discussed, this issue need not be reached.
*124 Conclusion
Therefore, for the foregoing reasons, we affirm the judgment of the trial court and assess all ■ costs of the appeal to Hema.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, GASKINS, CARAWAY, PEATROSS, and KOSTELKA, JJ.
Rehearing denied.

. Shiva’s first name was mistakenly spelled as "Temkur” on the caption of these proceedings instead of the correct "Tumkur.”

. The return receipt was introduced as D-ll, and it shows the date of receipt by Hema as being "12-10-81.” However, Hema testified that customarily in India, the day is listed first, followed by the month and year. Thus, "12-10-81” denotes receipt on October 12, 1981 and not on December 10, 1981.

. Hema raises the point that the curator's return receipt did not come back until after the Separation Judgment was rendered, which point the trial court recognized as well. However, the trial court determined that waiting approximately seventy-five days from sending Hema notice to the culmination of the Separation Proceedings was a reasonable period of time. We note that whereas La. C.C.P. art. 5094 requires a curator to use "reasonable diligence” in communicating with a defendant regarding the pendency and nature of the action against him, it does not specifically mandate that "reasonable diligence” must be by certified mail. We conclude that the trial court's determination that seventy-five days was a reasonable period of time in which to wait for the return receipt and then commence with the Separation Proceedings was not in error. See, Grey v. Grey, 476 So.2d 1003 (La.App. 1st Cir.1985), citing, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("... The notice must be of such nature as reasonably to convey the required information, ..., and it must afford a reasonable time for those interested to make their appearance, ... ”).