AMANDA COUSIN

VERSUS

MICHAEL COUSIN

NO. 21-CA-150

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 761-838 C/W 797-938, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

December 23, 2021

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**AFFIRMED**
 **SJW**
 **SMC**
 **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Susan S. Buchholz
First Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
AMANDA COUSIN
      W. J. LeBlanc, Jr.

COUNSEL FOR DEFENDANT/APPELLANT,
MICHAEL COUSIN
      Don C. Gardner

**WINDHORST, J.**

Appellant, Michael Cousin ("Michael"), seeks review of the trial court's August 27, 2020 judgment granting appellee, Amanda Cousin's ("Amanda") oral motion for involuntary dismissal and dismissing his petition for nullity of judgment of divorce. For the following reasons, we affirm.

**PROCEDURAL HISTORY AND FACTS**

Michael and Amanda were married on December 17, 2005 and two children were born from this marriage. On June 10, 2016, Amanda filed a petition for 102 divorce, stating that she intended to live separate and apart from Michael for the requisite time period from the filing and/or service of her petition. On June 21, 2016, Michael signed a waiver of citation and acceptance of service. On April 19, 2018, Amanda filed an affidavit stating that the parties lived separate and apart for the requisite period of time and a rule to show cause why her petition for 102 divorce should not be granted. A hearing was set for May 11, 2018. On April 26, 2018, Michael signed a waiver of citation and acceptance of service of the rule to show cause stating that he received a certified copy of Amanda's rule to show cause for a 102 divorce, and that "he accepts service thereof, that he knowingly waives service of process and formal citation thereof, and further waives all legal delays, notice of trial and appearance at trial." The waiver of citation and acceptance of service was filed on April 30, 2018. On May 2, 2018, Amanda filed another affidavit stating that the parties lived "separate and apart continuously since June 10, 2016, more than 365 days prior to the filing of the Rule to Show Cause, and are still living separate and apart." The affidavit further stated that to the best of her knowledge, Michael did not and has not contested the divorce and that she desired a 102 divorce. On May 7, 2018, Michael retained new counsel.[1] On May 11, 2018, a judgment of

---

[1] New counsel withdrew on August 14, 2018, approximately three months after the judgment of divorce.

divorce was granted in favor of Amanda, terminating the community of acquets and gains retroactive to June 10, 2016.[2] Thereafter, on August 23, 2018, the parties entered a consent judgment concerning custody and support.

On August 2, 2019, Michael filed a *rule* to nullify judgment of divorce contending that at the time the petition for divorce was filed, the parties were living together and continued to live together until February of 2018. He contended that the requisite period of time had not lapsed prior the judgment of divorce granted on May 11, 2018; therefore, the judgment of divorce was an absolute nullity under La. C.C.P. art. 3953.

In response, Amanda filed exceptions of prescription, vagueness, and unauthorized use of summary proceeding. On September 16, 2019, Michael filed a *petition* for nullity of judgment of divorce. In the petition, Michael alleged that the parties were living together at the time Amanda filed the petition for 102 divorce and when she requested that he sign the waiver of citation and acceptance of service. Michael contended that the parties lived together until February 2018 and thus, under La. C.C.P. art. 3953, the May 11, 2018 judgment of divorce is an absolute nullity.

On August 2, 2019, in a separate case, <u>Michael Cousin v. Amanda Cousin</u>, case number 797-938, Div. "D," Michael filed a petition to annul and/or revoke the act of donation *inter vivos*. The petition to nullify judgment of divorce and petition to annul or revoke act of donation *inter vivos* were consolidated on September 24, 2019.

A bench trial was held on July 9, 10, and 14, 2020. At the close of Michael's case-in-chief, counsel for Amanda orally moved for a motion for involuntary dismissal pursuant to La. C.C.P. art. 1672 B as to Michael's petition to nullify judgment of divorce.

---

[2] On May 11, 2018, counsel for Amanda filed an Appendix 27.0A: La. C.C. art. 102 Divorce Checklist, certifying the parties' eligibility for divorce.

In granting Amanda's oral motion for involuntary dismissal and dismissing the petition, the trial court gave the following detailed reasons:

> . . . In viewing those pictures, you can look at them obviously two ways. One of which is, as [counsel for Michael] would have the Court interpret them, there is a consistent connection between the parties, such that it would indicate that [Michael] was in fact living at the Canary Ansas house during that time period, based on the photographs of the cooking, and interaction with the children, and family gatherings that these parties never actually did live separate and apart during that time period. Obviously, the other interpretation was suggested by the Court, which is that the photographs indicate an attempt by [Amanda] to allow [Michael] to participate with his children as much as possible during those time periods where he was sober and capable of doing so.
>
> *     *     *
>
> You take those photographs, obviously, as an element of evidence in connection with the testimony. The testimony -- the best testimony -- of how these parties were interacting during that time period is only really from [Michael] and [Amanda], in terms of what the interaction entailed. [Amanda] obviously has a completely different view of what those interactions involved, as opposed to [Michael]. The Court asked questions of both parties in an attempt to reconcile or look for some commonality in some of the factors that the Court must consider in determining whether or not the parties did live separate apart in such a manner as the community would be aware of their separation as suggested by Lemoine and other cases. So each of the questions that I asked came from case law and factors that have been considered by the Courts. For instance, when asked how many times did you go out of town together, [Amanda] answered four times, always with the kids. [Michael] answered three or four times. How many times did you spend the night; [Amanda] answered on occasion, as I recall, but never in the bedroom. And [Michael] answered roughly 85 percent of the time. How many times did you have sexual relations; [Amanda] could specifically remember one occasion, as I recall, after a bridal shower, and that was it. [Michael] suggested it was thirty times or more. Were the visits from [Michael] consistent, intermittent, sporadic or otherwise; [Michael] suggested that they were consistent, was his word, and [Amanda] was having difficulty using the Court's choice of words, but was in the nature of a sporadic or intermittent-type visitation. Did [Michael] rent a separate residence; [Amanda] said yes, there was a lease from March '16 to September of '16. [Michael] suggested that he rented an

apartment at most, four months sometime in August and September of '16. Did you ever intend to resume the marital relationship or a romantic relationship; [Amanda] said no, that any relationship she had with [Michael] during that time periods was exclusively for the kids' benefit, and [Michael] stated that obviously yes, he did intend to resume that relationship. How many people did you tell that you had split up, or were separated or were divorced; [Amanda] indicated that she told her friends, her family, her dance moms, teachers, and employers. [Michael] indicated that family and friends were aware, but not anyone within his work environment. Did [Michael] ever move all of his belongings; [Amanda] indicated that he did remove what he needed, but other items remained at the house. . . . [Michael] indicated that he kept old clothes there -- old clothes at his parents' house, but he kept the majority of his belongings that he was using in the master bedroom at the Canary Ansas house. In which room did you keep your belongings at the home before they were removed; [Amanda] indicated the office or guest bedroom. Again, [Michael] indicated the main marital bedroom. Was he allowed access to anywhere in the home; [Amanda] indicated that no, at night it was locked –her door was locked. He said that he could come and go as he pleased throughout the home, and in and out of the home. How many times that [Michael] and [Amanda] go out together after filing for divorce without the children; [Amanda] could recall two times. [Michael] recalled roughly thirty- six times, he would estimate because they frequently attend movies and what not together, by themselves without the children.

The longest continuous period of time that [Michael] stayed at the house; [Michael] indicated was from October of '16 to February of '17 was the longest continued period of time that he stayed away was only a couple of days; I unfortunately did not jot down notes about [Amanda] and her answer to those questions or whether or not I asked her those questions. Presumably, based upon the other answers, her answers would differ significantly.

The point in going through those individually and somewhat believably, is that they are irreconcilable. There's no way you either spent a couple of nights at the home or 85 percent of the nights at the home. There is no way that you went out a few times together without the children or at least thirty-six times without the children. There's also no way you and he only had sex one time during that time period or thirty times or more during that time period. So, there's obviously no way for the Court to reconcile the difference in that testimony. You can't

simply say well, you know, we'll split the difference or something along those lines. Obviously, one party is giving the Court information that is not true. In that regard, and looking to the credibility of the parties, I think it's only fair to say that I am struck by [Michael's] testimony with respect to the fact that when asked questions on direct, he had no trouble remembering the answer or anything else to any question asked on direct, but had difficulty remembering the answer or was able to answer very few questions, if any, directly, when posed by defense Counsel. It seems, again, incongruent to the Courts that someone would have an adequate memory on direct, and then completely inadequate memory on cross.

It appears to the Court, considering the totality of the circumstances as I'm required to do, that in viewing all of the evidence -- the photographs, the testimony, the testimony of the other parties and I think it's fair to mention both Mr. and Mrs. Wong [friends and witnesses to act of donation] were aware of that the fact [Michael] and [Amanda] were divorcing or were separated. Mrs. Cousin -- Mrs. Linda Cousin [Michael's mother] -- specifically testified that she had told her friends that she was aware that they were separating or divorcing. And I think, as someone pointed out, was not upset about that. It would appear to the Court that the most logical explanation and the most realistic explanation for the discrepancy in the testimony and the photographs would be that [Amanda] was making an effort to include [Michael] with the children when, again, he was capable of doing so based upon his sobriety. I think it is basic human compassion to not force someone to sleep in the rain and to allow him to sleep in the playhouse or perhaps downstairs, when he had nowhere else to go that does not constitute a situation where the parties have not lived separate and apart for 365 days. There was no indication to the Court that at any time [Amanda] -- and the witnesses were presented more specifically -- that at any time [Amanda] told anyone that she was working on her relationship, she was trying to get back together, that she was letting Michael live in the house for a time period to see if they could work it out. No such testimony came into the record. [Amanda] specifically denies there was ever an attempt to reconcile; she never intended to go back with [Michael].

So I think the evidence, as presented, can most fairly be viewed as attempt by [Amanda] to include [Michael] in the children's lives where, again, he was capable of participating. That being said, this is not, again, a confirmation of the divorce, this is not simply a preponderance of the evidence, and again I have to take note of the fact that these issues weren't contested

by [Michael] at the time they were presented to the Court when the divorce was sought. Had [Michael] believed that they had not lived separate and apart for the requisite 365 days at the time the divorce was sought, he certainly could have proposed it at that time and faced a much lesser burden in the eyes of the law. As indicated in the case law cited by the Court, the Court is not keen to overturn the Judgment once it has been rendered, thus the higher burden of clear and convincing evidence. And I don't think the evidence presented rises to the level, honestly, of a preponderance, much less of a clear and convincing standard such that the Action for Nullity should be granted.

I need to point out that the Action for Nullity had several causes of or several theories of the case as well. There was allegations of lack of capacity and that sort of thing. Those allegations seem to be abandoned with respect to the Petition for Nullity of Divorce. There was no argument that he didn't understand whether he was signing or anything along those lines. The argument for the divorce nullity seemed to come down to simply they did not live separate and apart for the requisite 365 days.

\*　　\*　　\*

. . . With all the reasons stated previously, taking the evidence in the totality of the circumstances into consideration, the Court is going to grant the Articles 1672 Motion for Voluntary Dismissal, dismissing Petition for nullity of judgment of divorce.

This appeal followed.[3]

## LAW and ANALYSIS

In his first and second assignments of error, Michael contends that the trial court applied the incorrect standard of proof to the motion for involuntary dismissal and to his petition for nullity of judgment of divorce, thus requiring this court to review the matter *de novo*. In his third and fourth assignments of error, Michael asserts that the trial court erred in granting the motion for involuntary dismissal and dismissing his petition for nullity of judgment of divorce. We disagree.

---

[3] On August 27, 2020, the trial court also granted Amanda's oral motion for involuntary dismissal pursuant to La. C.C.P. art. 1672 of Michael's petition to annul and/or revoke act of donation *inter vivos*, a consolidated matter, and dismissed Michael's petition. In a consolidated appeal, 21-CA-151, Michael appealed this ruling.

A trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review unless they are manifestly erroneous or clearly wrong. Wooley v. Lucksinger, 09-571 (La. 04/01/11), 61 So.3d 507; Rosell v. ESCO, 549 So.2d 840 (La. 1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trial court's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Robinson v. Board of Supervisors for University of Louisiana System, 16-2145 (La. 06/29/17), 225 So.3d 424, 430, citing Rosell, 549 So.2d at 844-845.

Under the manifest error standard, the trial court's factual findings can be reversed only if the appellate court finds, based on the entire record, no reasonable factual basis for the factual finding and the fact finder is clearly wrong. Baker v. PHC-Minden, L.P., 14-2243 (La. 05/05/15), 167 So.3d 528, 538. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, then the court of appeal may find manifest error even in a finding based on credibility. Robinson, 225 So.3d at 430. But where no such factors are present, and the fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id.; Bellard v. American Central Insurance Co., 07-1335 (La. 04/18/08), 980 So.2d 654, 672.

In a nonjury case, the defendant may move for an involuntary dismissal of the action against him after the close of the plaintiff's case. La. C.C.P. art. 1672 B.[4]

---

[4] La. C.C.P. art. 1672 B provides:

B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

The appropriate standard in determining whether an involuntary dismissal should be granted is whether the plaintiff has presented sufficient evidence in his case to establish his claim by a preponderance of the evidence. Treen Const. Co., Inc. v. Schott, 03-1232 (La. App. 5 Cir. 01/27/04), 866 So.2d 950, 954. The trial court has much discretion in determining whether to grant a motion for involuntary dismissal. Matherne v. Jefferson Parish Hosp. Dist. No. 1, 14-403 (La. App. 5 Cir. 12/16/14), 166 So.3d 297, 302, writ denied, 15-117 (La. 04/10/15), 176 So.3d 1032. An appellate court may not reverse a ruling on a motion for involuntary dismissal unless it is manifestly erroneous or clearly wrong. Id. On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Id.

Because an involuntary dismissal of an action pursuant to La. C.C.P. art. 1672 B is based on the "facts and law," a review of the substantive law applicable to Michael's case is necessary. See In re Fogg, 19-719 (La. App. 1 Cir. 02/21/20), 298 So.3d 291, 294; Lakeshore Chrysler Dodge Jeep, Inc. v. Windstream Communications, Inc., 17-841 (La. App. 1 Cir. 12/21/17), 240 So.3d 939, 943.

La. C.C. art. 102 provides:

> Except in the case of a covenant marriage, a divorce shall be granted upon motion of a spouse when either spouse has filed a petition for divorce and upon proof that the requisite period of time, in accordance with Article 103.1, has elapsed from the service of the petition, or from the execution of written waiver of the service, and that the spouses have lived separate and apart continuously for at least the requisite period of time, in accordance with Article 103.1, prior to the filing of the rule to show cause.
>
> The motion shall be a rule to show cause filed after all such delays have elapsed.

Further, La. C.C.P. art. 3953 provides:

> A judgment rendered in accordance with Civil Code Article 102 shall be an absolute nullity when:

(1) Less than the requisite period of time, in accordance with Article 103.1, has elapsed between service of the petition, or between execution of written waiver of service of the petition, and filing of the rule to show cause.

(2) Less than the requisite period of time, in accordance with Article 103.1, has elapsed between the date the parties commenced living separate and apart and filing of the rule to show cause.

(3) The requirements of this Title with respect to jurisdiction and venue have not been met.

La. C.C. art. 103.1 provides that when there are minor children of the marriage, the requisite time period for an article 102 divorce is 365 days. Additionally, a cause of action for divorce is extinguished if the parties reconcile. La. C.C. art. 104. Reconciliation occurs when there is a mutual intent to reestablish the marital relationship on a permanent basis. Lemoine v. Lemoine, 97-1626 (La. App. 3 Cir. 07/01/98), 715 So.2d 1244, 1248.

As the trial court correctly pointed out, the appropriate issue in this case is whether the parties lived separate and apart continuously for 365 days, without reconciliation, prior to the filing of the rule to show cause. Living separate and apart for the purpose of obtaining a divorce means that the parties live apart in such a manner that those in the community are aware of the separation. Lemoine, 715 So.2d at 1248; Billac v. Billac, 464 So.2d 819 (La. App. 5 Cir. 1985).

Here, the trial court held:

> In this case, June 10th, 2016, Amanda Cousin filed the Petition for the 102 Divorce. On June 21st, 2016, Michael Cousin executed a Waiver of Service of the 102 Divorce Petition. 667 days later, by my calculation, on April 19th, 2018, Amanda Cousin filed a Rule to Show Cause for Divorce, obviously well over the 365 days required, and ultimately on May 11th, 2018, the Judgment of Divorce was rendered, pursuant to 102.

> The issue is whether the parties have lived separate and apart.

There is a strong public policy against disturbing or declaring invalid a judgment of divorce, especially after a long period of time where the marital status

of innocent parties who relied on the validity of that judgment would be disturbed, and more particularly, where a decree would render innocent parties guilty of bigamy. Peschier v. Peschier, 419 So.2d 923 (La. 1982); Wilson v. Calvin, 221 La. 451, 59 So.2d 451 (1952); Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (1949); Rouse v. Rouse, 219 La. 1065, 55 So.2d 246 (La. 1951). Because of this strong public policy and a presumption as to the regularity of the judicial proceedings, plaintiff must prove by clear and convincing evidence the grounds for annulment of a judgment of divorce.[5] Id.; See also Hemavathy v. Shivashankara, 34,440 (La. App. 2 Cir. 02/28/01), 782 So.2d 115, 118.

Upon review of the law and transcript of the trial on the merits, we do not find that the trial court applied the incorrect standard of proof to the motion for involuntary dismissal pursuant to La. C.C.P. art. 1672 and to his petition for nullity of judgment of divorce. Furthermore, based on the testimony and evidence, and considering the trial court's thorough and detailed reasons, we do not find that the trial court was manifestly erroneous in finding that the parties lived separate and apart continuously for 365 days, without reconciliation, prior to the filing of the rule to show cause. The trial court's findings were based on determinations of the credibility of witnesses and the parties. In this case, the trial court found Amanda's version of the events to be more credible than Michael's. Giving vast deference to the trial court, we find no manifest error. We find the trial court's decision regarding the credibility of the witnesses, especially Amanda and Michael, to be reasonable. Only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Robinson,

---

[5] Citing State ex rel. Dept. of Social Services v. Langlois, 03-849 (La. App. 1 Cir. 03/03/04), 874 So.2d 216, 217, Michael contends that the plaintiff in a nullity action has the burden of proving his case by a preponderance of the evidence and that the trial court incorrectly applied the more difficult standard of clear and convincing. Langlois, however, involved the nullification of a default judgment rendered against a defendant who was not properly served with the petition and citation. La. C.C.P. arts. 1201 and 2002. Langlois is therefore inapplicable to the nullity of a judgment of divorce. We find the Peschier to be controlling of a petition for nullity of a judgment of divorce.

<u>supra</u>.   Therefore, we find that the trial court was not manifestly erroneous in granting Amanda's oral motion for involuntary dismissal pursuant to La. C.C.P. art. 1672 B, and dismissing Michael's petition for nullity of judgment of divorce.

**CONCLUSION**

Accordingly, for the above stated reasons, we affirm the trial court's August 27, 2020 judgment granting Amanda Cousin's oral motion for involuntary dismissal pursuant to La. C.C.P. art. 1672 B, and dismissing Michael Cousin's petition for nullity of judgment of divorce.

<u>**AFFIRMED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 23, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 21-CA-150

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
LESLIE A. BONIN (APPELLEE)          W. J. LEBLANC, JR. (APPELLEE)          CYNTHIA A. DE LUCA (APPELLANT)
DON C. GARDNER (APPELLANT)          MARYNELL L. PIGLIA (APPELLANT)

## MAILED

ALBERT J. GARDNER, III (APPELLANT)
ATTORNEY AT LAW
6380 JEFFERSON HIGHWAY
HARAHAN, LA 70123